No. 3368

Second Circuit

(Second Division)

———

WESSELL PLUMBING CO., INC., v.
SCRIBER & CURTIS

———

(May 7, 1931.  Opinion and Decree.)
(June 11, 1931.  Rehearing Refused.)

———

C. B. Prothro, of Shreveport, attorney for plaintiff, appellant.

L. K. Watkins and R. D. Watkins, of Minden, attorneys for defendant, appellee.

STEPHENS, J. On April 11, 1923, the plaintiff, Wessell Plumbing Company, Inc., agreed to sell and deliver to the defendant, Scriber & Curtis, certain refrigerating equipment. The defendant agreed to pay the plaintiff therefor the sum of $1,551.28, of which $232.72 was to be paid upon delivery of the refrigerating equipment at Sibley, Louisiana, and the balance in monthly installments of $97 each. The plaintiff shipped the equipment and drew a draft on the defendant for the sum of $232.72, in favor of the First National Bank of Shreveport, Louisiana, and attached the draft to a shipper's order notify bill of lading. The draft, with bill of lading attached, was forwarded by the First National Bank of Shreveport to the Sibley State Bank for collection. The defendant, on May 8th, having learned that the refrigerating equipment had arrived at Sibley, gave the cashier of the Sibley State Bank a check on its account, with said bank, for the amount of the draft, and received the draft and bill of lading from the cashier. On presentation of the bill of lading to the railroad company the refrigeration plant was delivered to the defendant, and shortly thereafter was installed by the plaintiff in the defendant's place of business. On May 15th, one week after defendant had given his check to the bank and received the draft, the bank's doors were closed. Sometime thereafter the liquidator of the bank, one Mr. Perritt, discovered the check in question in a pigeonhole in the bank. It was not marked "Paid," but someone, presumably the cashier of the bank, who had received it, had placed a notation on it "Not used." An examination of the books of the bank at that time disclosed that the amount of the check had never been charged to the defendant's account, and that the defendant had a balance credited to his account of more than enough to pay it at the time the check was given. The amount of money for which the check was given was never transferred to the First National Bank for payment to the plaintiff. The liquidator of the bank returned the check to the defendant, and sometime thereafter sent him a dividend of 15 per cent, which was calculated on the amount of his deposits at the time the bank was closed.

All payments due under the agreement except the amount of the draft were subsequently received by the plaintiff.

This suit is to recover the amount of the draft. The defendant answered and pleaded payment.

Judgment was rendered by the trial court rejecting plaintiff's demands, and the plaintiff appeals.

The question in the case is whether the transaction between the defendant and the Sibley State Bank was a payment of the draft.

The bank, no doubt, was the agent of the plaintiff for the purpose of collecting the draft, but an agent merely authorized to receive payment of a debt cannot bind his principal by any arrangement short of an actual collection and receipt of the money. It is well established that the

power of a collecting agent is limited to receiving for the debt of his principal, that which the law declares to be legal tender, or which is by common consent considered and treated as money. The only condition imposed on the principal, if the agent, acting beyond the scope of his general authority, receives something else in payment, is, that he repudiate the unauthorized transaction within a reasonable time after it is brought to his knowledge.

"It is a general rule that a bank which is acting as the collecting agent of the owner of a claim has no authority, unless specially conferred, to accept in payment anything but cash." 3 R. C. L. p. 616, sec. 245.

"It is a rule prevailing in all but a few jurisdictions, that a check given by a debtor to his creditor for the amount of the indebtedness does not amount to a payment, in the absence of an agreement, express or implied, that it shall amount to payment." 21 R. C. L. 60, sec. 59.

Both of these rules militate against the receipt of a check operating as payment generally.

The latter rule was applied by the Iowa Supreme Court in Bellevue Bank v. Security National Bank, 168 Iowa 707, 150 N. W. 1076, in which case the check tendered in payment of the draft, as in the instant case, was drawn on the bank holding the draft for collection. It was held that the acceptance by a bank holding a claim for collection of a check drawn upon itself by the debtor, operates as conditional payment only, and, upon the dishonor of the check the condition was held to fail, and the holder of the note entitled to maintain his original cause of action.

The counsel for the defendant contends that the bank was guilty of negligence in not remitting the money called for by the check, and that its laches in this respect is imputable to plaintiff. The assumption, in this contention, that the bank had any money to remit is not supported by the record. It is true that it was shown that the defendant had a paper balance to its credit at the time the check was given, but that fact does not even raise the presumption that the bank was solvent or that it had the money to pay the check. On the contrary it is indicated by the manner in which the check was handled, and the closing of the bank's doors within a week, and the inability of the bank to pay its depositors, that it was not only insolvent when the check was given, but did not have sufficient funds to pay it. There is nothing in the record that suggests that the bank became insolvent within the week that it was closed.

Clearly, the bank could not, by exceeding its authority as agent for the purpose of collecting the draft, enter into an arrangement by which it assumed the debt. That is precisely, in our opinion, what the bank attempted to do. The only reasonable explanation of the conduct of the cashier is, that he, with full knowledge of the bank's insolvent condition, accepted plaintiff's check, not with the intention of converting it into cash, and forwarding the cash to plaintiff, but for the purpose of hiding, temporarily, its insolvent condition by substituting the bank as debtor for its depositor.

The Michigan Supreme Court, in State Bank of Midland v. Byrne, 97 Mich. 178, 56 N. W. 355, 356, 21 L. R. A. page 753, 37 Am. St. Rep. 332, disposed of a case presenting the question under consideration here, as follows:

"The fact that a debtor has a credit at a bank is not conclusive evidence that the bank has money with which to honor his

checks. As in this case, the bank may be insolvent when it receives the check, and there is no good reason apparent for permitting the depositor of an insolvent bank to pay his debt with worthless paper, thereby making his creditor a loser."

However, even if it be assumed that the bank was solvent and the money available to pay the check at the time it was given to the cashier, we are of the opinion that the draft was not paid. There is no suggestion in the books of the bank nor the record of the case that the bank had collected the money (the only thing it was authorized to collect) and held possession of it for the account of the plaintiff. The check was not marked "Paid" and was pigeonholed, and no record made of the transaction, either as a charge against the defendant's account or as a credit to plaintiff. The payment, if it can be so designated, was a conditional one. The condition failed in that the check was never converted into cash or its equivalent.

As the bank never collected the money, it could not be negligent in not remitting it. The bank's negligence consisted in accepting something in payment of the draft other than money; and as such negligent act was unauthorized by plaintiff it is not imputable to him.

The Iowa Supreme Court held that, even though there were sufficient funds to pay a check, and the check was received by the bank and marked "Paid," if due to the bank's insolvency the check was never paid, the draft it held for collection, for which the check was given, was not paid.

"The tender to a bank to which a draft with bill of lading attached has been sent for collection, of a check on itself, does not amount to payment, although the maker of the check had sufficient funds on deposit to meet the check, and the check is marked 'Paid,' if the draft requires payment in cash or its equivalent, and the bank is insolvent, so that the check is never paid." Sanitary Can Co. v. National Pickle & Canning Co., 191 Iowa 1259, 184 N. W. 354, 18 A. L. R. 532.

The only distinction between the cited case and the instant case, other than noted above, is that in the former there was specific instruction to the collecting bank written on the face of the draft as follows: "This draft must be paid in cash or its equivalent, the bank named as payee acting only as agent to collect."

In the instant case the bank was acting under the general authority of collecting agents, which as shown, supra, would permit only the collection of money or its equivalent in payment of the draft.

The defendant received the goods of the plaintiff and has not paid that portion of the purchase price represented by the draft. We feel that he is liable on his original obligation.

The amount of defendant's loss, incident to the bank's insolvency, no doubt had been sustained at the time the check was given, though he had no knowledge of it.

The decision of the trial judge is supported by a number of well considered cases, but we are of the opinion that the great weight of authority supports the view herein expressed.

For which reasons the judgment appealed from is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff and against the defendant Scriber & Curtis, and the individual members of the partnership, T. S. Scriber and W. T. Curtis, in solido, in the sum of $232.72, with legal interest thereon from May 8, 1923, until paid, and all costs.