JOFFRION-WOODS, INC., v. HIBERNIA BANK & TRUST CO.

———

(January 11, 1932.   Opinion and Decree.)
(February 15, 1932.   Rehearing Refused.)
(March 30, 1932.   Writs of Certiorari and
   Review Refused by Supreme Court.)

———

Martin, Woods & Woods, of Lutcher, and Chas. T. Wortham, of Donaldsonville, attorneys for plaintiff, appellant.

Rosen, Kammer, Wolff & Farrar, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. This matter is submitted on an agreed statement of acts, and, since those facts are somewhat involved, we have concluded to set forth in full the statement as prepared by counsel:

"On January 26, 1927, plaintiff was the holder for value of a check for the sum of $1,740.32 drawn by L. B. Babin, of White Castle, La., on the Bank of White Castle, said check being payable to plaintiff's order.

"After endorsing said check, plaintiff deposited same with the St. James Bank & Trust Co., Lutcher, La., with the full understanding that said bank would forward same for collection in the usual and customary manner.

"The St. James Bank & Trust Co., as was its custom with out-of-town checks, after endorsing said check, forwarded same to the defendant bank for collection for account of the St. James Bank & Trust Co.

"The defendant bank acknowledged receipt of said check on the printed form hereto annexed and marked 'Exhibit A,' filling in one of the blank lines with the date or number of the said check and the amount thereof.

"On January 27, 1927, the defendant bank sent the said check, with other checks, constituting a cash letter, to the Bank of White Castle for collection and payment.

"The said check reached the Bank of White Castle on January 29, 1927. The drawer, L. B. Babin, had sufficient funds to his credit in the said bank, and the Bank of White Castle immediately stamped the said check 'paid,' charged the amount to the account of said Babin, and placed the said check among the cancelled checks to be returned to said Babin.

"The Bank of White Castle then issued an exchange or draft, No. 8244, dated January 29, 1927, drawn on the defendant bank for the amount of $2,768.97, in payment of said cash letter, which amount included the payment of said Babin's check for $1,740.32, and other checks.

"The said draft for $2,768.97 reached the defendant bank on January 31, 1927.

"At the opening of business on January 31, 1927, the Bank of White Castle had on deposit with defendant bank in a checking account the sum of $995.95. At or about the same time that defendant bank received from the Bank of White Castle the said draft for $2,768.97, the defendant bank also received from the Bank of White Castle for collection various checks aggregating $3,475.46, all of which were received for collection on exactly the same terms and conditions as the check received by defendant bank from the St. James Bank & Trust Co. as set out in 'Exhibit A' hereto annexed.

"Said checks so received consisted of one drawn on a bank in Cleveland, Ohio, for $2.444.67, and other checks aggregating $1,030.79.

"The defendant bank entered on its books a credit to the aforesaid checking

account of the Bank of White Castle for the full amount of said checks, namely, $3,475.46, making the total credit to the Bank of White Castle in said account the sum of $4,471.41.

"The aforesaid check on Cleveland, Ohio, for $2,444.67 was, on January 31, 1927, forwarded to Cleveland, Ohio, for payment by mail, in the usual course of business, and the defendant bank had no way of knowing, prior to February 2, 1927, at the earliest, whether or not said check would be paid. Without including the amount of this check there was to the credit of the Bank of White Castle on the books of the defendant bank only the sum of $2,026.74.

"Defendant bank dishonored the said draft, and remitted no funds to the St. James Bank & Trust Co. in payment of the check in question.

"On being notified by the defendant bank that the check had failed of collection, the St. James Bank & Trust Co. charged the amount of said check to plaintiff's deposit account with it.

"The said check for $2,444.67 on Cleveland, Ohio, was paid on or about February 3, 1927.

"The State Bank Commissioner of Louisiana closed the Bank of White Castle in the forenoon of February 1, 1927, and said bank was not thereafter reopened.

"The St. James Bank & Trust Co. in forwarding said check for collection, as aforesaid, acted as the agent for plaintiff."

In its petition, plaintiff charges "that at the time the said draft was drawn by the Bank of White Castle, and received by the Hibernia Bank & Trust Company, the Bank of White Castle had to its credit on the books of the Hibernia Bank & Trust Company, as a deposit account subject to check or ·draft, the sum of Four Thousand, Four Hundred Seventy-three and 20/100 ($4,473.20) Dollars."

It appears, however, from the statement of facts, that, when that draft was received by Hibernia Bank & Trust Company, there was to the credit of the Bank of White Castle not $4,473.20, as alleged in the petition, but only $995.90, and that thus Hibernia Bank & Trust Company, as drawee of the said draft, found itself under the necessity of deciding whether it would permit the Bank of White Castle to overdraw its account, or whether it would dishonor the said draft within twenty-four hours of its receipt, since, under section 136 of Act No. 64 of 1904 (the Negotiable Instrument Law), "the drawee is allowed twenty-four hours after presentment in which to decide whether or not he will accept the bill."

Defendant bank (Hibernia), being unwilling to permit the overdraft, followed the other course and dishonored the draft.

Since defendant, Hibernia Bank & Trust Company, had come into possession of the draft as agent for plaintiff and others, and, since it was payee as well as drawee, it did not return the draft to Bank of White Castle, but retained it, and in doing so it followed the proper course, because the draft did not belong to the Bank of White Castle, but belonged to plaintiff and others, who were interested in the amount which the Bank of White Castle was attempting to remit to Hibernia Bank & Trust Company.

Thereafter, it is true that the other checks which had been sent by the Bank of White Castle for collection were actually collected, and, as a result of said collections, the account of the Bank of White Castle in Hibernia Bank & Trust Company showed a credit balance of $4,473.20; but before that time the Bank of White Castle had been closed by the state bank commissioner of Louisiana, who took over its affairs.

When Hibernia Bank & Trust Company accepted those checks, it took them merely for collection, and the amounts represented by the checks did not thereby become immediately available to Bank of White Castle.

Even had the checks been received "for deposit," instead of "for collection," Hibernia Bank's receipt of them would not have been unconditional. Joffrion-Woods, Inc., v. St. James Bank & Trust Co., 171 La. 172, 129 So. 808.

As has been said by the United States Circuit Court of Appeals for the Fifth Circuit in Pascagoula National Bank v. Federal Reserve Bank, 11 F. (2d) 866, 867:

"As above indicated, the duty of a bank, whether imposed by statute or by agreement, to receive on deposit checks on other banks, does not necessarily imply that the amount to be credited for a check becomes, immediately upon the bank's receipt of it, part of the depositor's balance, subject to be checked against and withdrawn."

It is argued that, since defendant, when it dishonored the said draft, did not return it to the Bank of White Castle, its action in retaining it constituted acceptance thereof. But, as we have stated, defendant had no right to return the said draft for the reason that a drawee who refuses to accept a draft must return it, not to the drawer, but to the owner, and, as we have said, the Bank of White Castle was not the owner, but was merely the drawer, and the draft was therefore properly retained by Hibernia Bank & Trust Company as the agent for plaintiff and others interested therein.

Had the state bank commissioner of Louisiana not closed the Bank of White Castle and taken charge of its affairs, the Hibernia Bank, as payee, would no doubt have presented the said draft again, and the draft would have been accepted and honored; but, before that could be done, the funds and assets of the Bank of White Castle were, by operation of law, impounded and subjected to the general pledge of creditors, and the Hibernia Bank & Trust Company, as depositary, having in its possession funds of that impounded estate, no longer had the right to honor drafts drawn against those funds.

It may at first be difficult to analyze the situation because of the confusion which results from the fact that defendant, Hibernia Bank & Trust Company, was both drawee and payee in the draft for $2,768.97, and because of the fact that, included in that draft, were amounts due to others than plaintiff; but if in discussing and considering the legal situation we substitute another bank for the Hibernia Bank & Trust Company in its capacity as payee, and if we consider only the amount due the plaintiff, the situation is easily understandable, and admits of no other legal conclusion.

For instance, let us assume that Joffrion-Woods, Inc., had handed to Canal Bank for collection a check for $1,740.32 drawn by Babin on the Bank of White Castle, and Canal Bank had presented the said check to Bank of White Castle and Bank of White Castle had, in remitting to Canal Bank for the proceeds of said check, sent a draft drawn on Hibernia Bank payable to Canal Bank. Canal Bank would have presented the draft to Hibernia Bank and that bank, since it did not have to the credit of the Bank of White Castle sufficient funds to honor the draft, would have dishonored it and would have returned it to Canal Bank, as payee. Later Canal Bank could have re-presented the draft, and, had funds then been available, payment would have been made; but if, in the meantime, Bank of White Castle had been closed and its affairs taken over by the state bank commissioner, the Hibernia Bank, as depositary, having in its possession funds of the Bank of White Castle, would have been forced to refuse pay-

ment because of the fact that, by the action of the state bank commissioner, all funds of the closed bank were impounded.

Counsel for plaintiff argue that, when the Bank of White Castle sent to Hibernia Bank checks for collection to be deposited to its general credit, it thereby appropriated, pro tanto, to the payment of the draft in question, so much of the proceeds of those checks as might be necessary to pay the draft, and that, thus the proceeds of those checks, when ultimately received, were subject to an assignment to plaintiff and others who were interested in that draft.

The issuance by the Bank of White Castle of the draft or check did not, of itself, operate as an assignment of any part of its funds, because that draft or check was never accepted by the drawee. It is provided in section 189 of Act No. 64 of 1904 (Negotiable Instrument Law) that "a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, * * *" and we find that, in discussing the question of whether or not the issuance of a check constitutes an assignment, the Supreme Court of Louisiana, in M. Feitel House Wrecking Co. v. Citizens' Bank & Trust Co., 159 La. 755, 106 So. 292, 294, said:

"* * * the law in this state is that, until a check has been accepted or certified by the drawee bank, it does not operate as an assignment of any part of the funds of the drawer in the bank, although the bank may have been notified of the drawing of the check, and hence, unless the check has been accepted or certified by the bank, there is no privity between the bank and the holder, and therefore the holder has no cause of action against the bank."

It follows that, although the Hibernia Bank & Trust Company knew that the draft or check was in existence and knew that, as payee, it would again present it to itself as drawee, nevertheless, since the check was not good when presented the first time, it was neither paid nor accepted by the drawee, and therefore no assignment took place. Later, when the funds were available, they had all been subjected to the rights of the state bank commissioner.

Had the Bank of White Castle, instead of sending to the Hibernia Bank the draft for $2,768.97 and the other checks to be collected and placed to its general credit, merely sent the checks with instructions to the Hibernia Bank to collect them and to use the proceeds to pay plaintiff and the others interested, then it might well be argued that those checks were thereby appropriated, or assigned to plaintiff and others similarly situated; but that is not what was done. The draft which the Bank of White Castle sent to Hibernia Bank was in no way connected as an associated transaction with the checks sent for collection.

Let us assume that A gives to B a check for $1,000, drawn on his account in the C bank, and that on that day A has in the C bank only $100, but deposits for collection checks payable to him totaling $900. Let us assume that B presents his check before the other checks have been collected, and that payment is refused him. Let us assume that A then goes into bankruptcy. Can it be argued that A has appropriated to the payment of B the checks which he gave to C bank for collection? We answer, most assuredly, "No." There has been no appropriation, no assignment, no "ear-marking" of funds, and other creditors have a right to share equally with B in that fund which forms a part of the impounded estate of A. Similarly, here, Bank of White Castle has not appropriated or assigned to the payment of plaintiff any portion of the checks sent to Hibernia Bank for collection. It has merely sent a draft in payment of a debt; the draft being

drawn against its general account and it, in an unassociated transaction, has sent on other funds to augment its general account. Non constat, there may be a hundred other creditors of Bank of White Castle holding similar drafts, and the payment of this one draft would create an illegal and unfair preference in favor of those interested in this draft and against all other creditors similarly situated. It cannot be assumed that there are no other creditors; nor can we undertake to rank their claims. The failure of the Bank of White Castle deprived that institution and its officers of the right to manage its affairs. It inoculated with the germ of death checks and drafts issued and outstanding, and it deprived those having the possession of assets belonging to it of the right to do anything with those assets, except hold them subject to the orders of the state bank commissioner.

What matters it that in its answer the Hibernia Bank & Trust Company did not in words state that it could turn over the fund only to the bank commissioner? The charge of the plaintiff is that, on January 1, 1927, when the draft for $2,768.97 was presented to Hibernia Bank & Trust Company, the Bank of White Castle "had to its credit on the books of the Hibernia Bank & Trust Company, as a deposit account subject to check or draft, the sum of Four Thousand, Four Hundred, Seventy-three and 20/100 ($4,473.20) Dollars."

The proof is that that bank did not have this amount to its credit. Thus plaintiff's case fails. Plaintiff did not allege that the Hibernia Bank later collected the other checks and that the credit was then sufficient to pay the draft. If it had so alleged, defendant could have answered that later, when the amounts were collected, the account had, by operation of law, been impounded. In fact, the admitted statement of facts does show that, when the credit was received the state bank commissioner had already taken charge.

The remaining question is: Can the Hibernia Bank refuse to remit to Joffrion-Woods, Inc., its share of what would have been the proceeds of the said draft, had it been paid, and can it base its refusal on the fact that the funds on deposit with it, which funds would have belonged to the Bank of White Castle had that bank not been closed, must be taken over by the state bank commissioner?

Plaintiff's counsel contends that in such case the depositary may not champion the rights of the state bank commissioner, and they assert in their argument that the said commissioner asserts no claim to the fund. In the first place, the record fails to show that the said bank commissioner asserts no claim to the fund and, in the absence of any affirmative showing that he abandons any claim thereto, we may not assume that he has no interest therein; particularly since the pertinent statute, Act No. 300 of 1910, plainly makes it his duty to take charge of any such asset as is here shown to exist.

Of course, no such suggestion is made here; but if a bank commissioner by inaction, may give to one ordinary creditor the opportunity to receive payment in full, such inaction would be plainly prejudicial to the rights of all other ordinary creditors. The statute makes it the duty of the commissioner to collect all such assets and, if it is his duty to collect, it is the duty of the holders of all such assets to pay to him and to no one else. It is thus the duty of Hibernia Bank & Trust Company to pay such fund to the bank commissioner, and it may not pay the fund, or any part thereof, to any other claimant.

The judgment appealed from is affirmed.

WESTERFIELD, J. I respectfully dissent.