## BAIN v. WORSHAM.
### No. 5004.

Court of Appeal of Louisiana.
Second Circuit.

March 8, 1935.

Tucker & Mason, of Shreveport, for appellant.

Wilkinson, Lewis & Wilkinson and Edw. S. Klein, all of Shreveport, for appellee.

MILLS, Judge.

Plaintiff sues to recover the sum of $1,620 due him under a subcontract with defendant for the construction of membrane waterproofing of barracks erected by defendant under contract with the United States government at Barksdale Field in Bossier parish. Defendant pleaded payment. The case was submitted to the lower court on the following agreed statement of facts:

"It is agreed by and between Hollace H. Bain, operating under the name and style of the H. H. Bain Sheet Metal Works, plaintiff in the above numbered and entitled cause, represented herein by his attorneys, Tucker & Mason, and Earl S. Worsham, operating under the name and style of Worsham Brothers, defendant in the above numbered and entitled cause, represented herein by his attorneys, Wilkinson, Lewis & Wilkinson, that this case shall be submitted to the Court for its determination on the following statement of facts:

"On or about November 14, 1932, plaintiff, as subcontractor, entered into a certain subcontract agreement with the defendant, as contractor, to furnish the requisite materials and to construct the membrane waterproofing for one 200 men barracks and one 330 men barracks for the United States of America at Barksdale Field, Bossier Parish, Louisiana, for a consideration of $2,400.00, which amount was to be payable in the following manner:—ninety (90%) per centum of all labor and material placed in position for which payment has been made by the owner to the defendant, to be paid on or before the fifteenth of the following month, except the last payment, which the defendant was to pay to plaintiff after the materials and labor installed and furnished by him had been completed and approved by the architect and paid for by the United States.

"That the plaintiff complied with all of his obligations under the aforesaid contract agreement to the United States of America has made the requisite payments to the defendant to entitle plaintiff to payment on account of his contract to the said amount of ninety (90%) per centum thereof, or $2,160.00.

"On or about February 18, 1933, the defendant paid to plaintiff the sum of $459.00, and on or about May 20, 1933, the defendant paid to plaintiff the sum of $81.00, which would leave a balance due to plaintiff in the amount of $1,620.00.

"On or about January 10, 1933, the defendant, Worsham Brothers, drew its check on the

East Tennessee National Bank, located in the City of Knoxville, Tennessee, in the sum of $1,620.00, which would constitute the balance then due and owing to plaintiff, as aforesaid, payable to the order of H. H. Bain Sheet Metal Works. This check was signed in Tennessee, sent to Worsham's agent at Barksdale Field in Bossier Parish, Louisiana, and was by him delivered to H. H. Bain's representative on January 13, 1933, this delivery being made in the State of Louisiana.

"On January 14, 1933, H. H. Bain Sheet Metal Works endorsed and delivered said check to the Commercial National Bank of Shreveport, located in the City of Shreveport. Said bank credited the account of plaintiff with the item, subject to the conditions set out in the deposit slip. A photostat of the original deposit slip (front and back) is hereto attached and made a part hereof, marked Exhibit 'A', all parties agreeing that the same is a true copy, that the conditions set forth on the back thereof are identical with the conditions set forth on the duplicate copy, and that it be filed and used as evidence herein, in lieu of original, as an offering of plaintiff.

"On or about January 14, 1933, the Commercial National Bank of Shreveport forwarded the check for collection to the Nashville Branch of the Federal Reserve Bank of Atlanta, located in the City of Nashville, Tennessee, and on or about January 15, 1933, the Nashville Branch of the Federal Reserve Bank of Atlanta forwarded the check for payment to the East Tennessee National Bank located in the City of Knoxville, Tennessee.

"On or about January 17, 1933, the said check was received by the said East Tennessee National Bank in Knoxville, Tennessee, and on January 17, 1933, the said check was stamped 'paid' by the said East Tennessee National Bank and charged to the account of the defendant, Worsham Brothers.

"That on January 17, 1933, at the time the said check for $1,620.00, drawn by defendant to the order of plaintiff, was stamped and marked 'paid' and the amount thereof charged to the account of said Worsham Brothers, there were sufficient and ample funds on hand in the said East Tennessee National Bank to the credit of defendant to pay the said check; that the said East Tennessee National Bank in Knoxville was open for business on January 18, 1933, but on January 19, 1933, which was a holiday, its directors voted to suspend business, and notice of the action so taken by the Board was communicated to the Branch of the Federal Reserve Bank of Atlanta in Nashville before it received notice

from the East Tennessee National Bank of the payment of the $1,620.00 check, coupled with authority to charge the drawee bank with the amount.

"The Commercial National Bank of Shreveport, having received neither cash nor solvent credits, charged the item to plaintiff on January 24, 1933, but the check was never returned to Commercial National Bank of Shreveport nor to plaintiff because the Receiver of the closed bank took the position that it had been paid and refused to surrender it.

"The original check was later delivered to defendant herein by the Receiver of the bank upon which it was drawn. Said check is hereto attached, made a part hereof, marked exhibit 'B', to be filed in evidence herein as an offering of the defendant.

"That plaintiff has never received the amount represented by said check and immediately upon the receipt of notice that same had not been paid, he made demand upon defendant for payment of the sum represented thereby, which was by defendant refused, and as a result this suit was brought.

"It is admitted that if the rights of the parties hereto were controlled by the laws and jurisprudence of the State of Tennessee, Earl S. Worsham, doing business as Worsham Brothers, would be discharged from liability on the check given to plaintiff herein, under authority of Winchester Milling Company v. Bank of Winchester et al., 120 Tenn. 225, 226, 111 S. W. 248, 18 L. R. A. (N. S.) 441. But plaintiff specifically objects to the relevancy of the laws and jurisprudence of Tennessee, as applied to the facts in this case, contending that the laws and jurisprudence of Louisiana are controlling, and the admission is made subject to this objection.

"It is admitted that the East Tennessee National Bank has paid one dividend since its suspension, and that as a result thereof $162.-00 was tendered to this plaintiff on January 31, 1934, which, with the consent of defendant, plaintiff received and credited to the account of defendant, without prejudice to the rights of any of the parties hereto. This reduces the claim of plaintiff under the pleadings to $1,620.00 with legal interest from judicial demand, less the credit of $162.00 paid January 31, 1934."

Considering the pleadings and the above statement of facts, the lower court rendered judgment rejecting plaintiff's demand; from which he has appealed.

■■ It is admitted that if the case is to be determined by the law of Tennessee, judg-

ment should be for defendant. The case of Winchester Milling Co. v. Bank of Winchester is given as authority for the above. A careful reading of this case discloses that it is not in point, the drawer of the check being discharged because of the negligence of a bank through which the payee had forwarded checks for collection. However, as the check in the present case was delivered to plaintiff, payee, in Louisiana, we have no difficulty in arriving at the conclusion that our law would determine the question as to whether or not the delivery and acceptance of the check constituted payment. It is equally clear, and is conceded, that the mere acceptance of the check did not constitute payment under the law of Louisiana. The only question remaining is whether or not the action of the drawee bank in stamping the check "paid," returning it to the drawer, and charging his account with its amount, is a payment. It is conceded that it is under the law of Tennessee. If we should find that a different rule prevails in our state, it would then be necessary to determine which law governs.

If the cases of Lake Charles Feed Co., Inc. v. Sabatier, 14 La. App. 233, 125 So. 318, 129 So. 261, and Wessell Plumbing Co. v. Scriber & Curtis, 16 La. App. 505, 134 So. 336, were still authority, it would be plain that our jurisprudence supports the contention of the plaintiff.

In the Sabatier Case, where the facts were almost identical with those in the present case, it is held that a check is not paid until its proceeds are actually received and placed under the control and in the custody of the collecting bank. This opinion was reinstated and made final on rehearing and writ was denied by the Supreme Court. To the same effect is the case of Wessell Plumbing Co. v. Scriber & Curtis.

In the present case, the drawee bank took no steps whatever toward the collection and remittance of the proceeds of the check beyond stamping it "paid," returning it to the drawer and charging his account with the amount which thus became a part of the general funds of the bank. No check or draft was forwarded to the intermediate collecting bank and no credit entry was made in favor of said bank or of the payee.

The Joffrion-Woods, Inc., deposited in the St. James Bank & Trust Company, at Lutcher, La., a check drawn by its debtor, L. B. Babin, on the Bank of White Castle, at White Castle, La. The St. James Bank forwarded the check to the Hibernia Bank & Trust Company in New Orleans for collection, which in turn forwarded it to the Bank of White Castle for payment. Babin having therein sufficient funds, the White Castle bank stamped the check paid, charged the drawer with the amount, and sent in payment its draft on the Hibernia Bank to that bank. The Hibernia dishonored the draft. The White Castle bank failed and was closed by the state bank examiner. Joffrion-Woods, Inc., first sued the St. James Bank & Trust Company, the original depository. Its demand was rejected. See Joffrion-Woods Co. v. St. James Bank & Trust Co., 10 La. App. 658, 121 So. 378; Id., 13 La. App. 704, 127 So. 28, and Id., 171 La. 172, 129 So. 808. Payee then sued the Hibernia Bank & Trust Company and was again unsuccessful. See Joffrion-Woods Co. v. Hibernia Bank & Trust Co., 19 La. App. 419, 139 So. 22. It finally brought suit against the state bank commissioner as liquidator of the Bank of White Castle. In that case the Court of Appeal, First Circuit, held that the sending of the check to the drawee bank by the Hibernia Bank & Trust Company constituted the White Castle bank the agent of the plaintiff to present the check for payment, creating the relation of principal and agent between the payee and drawee. That though no credit was entered in favor of payee, the transaction was in effect a collection and realization of the amount of the check by the bank as agent for Joffrion-Woods, Inc., its principal, and entitled the latter to a lien and privilege on the property and assets of the bank as provided in section 1, Act No. 63 of 1926. See Joffrion-Woods, Inc., v. Brock, State Bank Comm'r (La. App.) 154 So. 660. The case went to the Supreme Court on a writ of review and is reported in 180 La. 771, 157 So. 589, 590. The Supreme Court, in affirming the judgment of the Court of Appeal, though stating that the only question is that of privilege, goes on to say: "Relator contends the Court of Appeal erred in holding that the check was collected within the intendment of the statutory provision. Relator argues that the only obligation resting on the Bank of White Castle was to honor the check of Babin, its depositor, when presented, and that the bank discharged its obligation when it issued its own check on the Hibernia Bank. It is not disputed that Babin had on deposit with the Bank of White Castle sufficient funds to meet the check when it was presented. And the check was paid, in contemplation of law, when the Bank of White Castle debited Babin's account with its amount, stamped it paid; returned it to the drawer, and forwarded its own draft to the Hibernia Bank. [Citing authorities.] * * * The bank of White Castle collected the check

as the agent of the drawee [meaning payee] and it paid the check as the agent of the drawer. There was nothing illegal in such a dual agency. The bank's duties as the drawee's [payee's] agent in no wise conflicted with its duties as the drawer's agent."

The matter is then reduced to the simple question of agency. Under the above decision, which we must follow, plaintiff has collected its debt through its agent, the East Tennessee National Bank of Knoxville, Tenn. As there cannot be a valid collection without a payment, the debt of defendant Worsham Bros. has been paid by it to plaintiff's authorized agent, and it is accordingly discharged.

Under the above authority, the plea of payment was correctly sustained by the lower court. The judgment appealed from is accordingly affirmed.