440 So.2d 1345 (1983)
The COWLEY CORPORATION, Plaintiff-Appellee,
v.
SHREVEPORT PACKING COMPANY, INC. OF KANSAS, Defendant-Appellant.
No. 15598-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 1983.
Rehearing Denied November 10, 1983.
Writ Denied January 16, 1984.
*1347 William M. Comegys, III, Shreveport, for plaintiff-appellee.
Nelson & Achee by James S. Denhollem and Harry R. Nelson, Shreveport, for defendant-appellant.
Before HALL, FRED W. JONES, Jr., and NORRIS, JJ.
NORRIS, Judge.
In this suit on a promissory note, Shreveport Packing Company, Inc., of Kansas ("Shreveport Packing") suspensively appeals a judgment awarding the Cowley Corporation ("Cowley") $42,487.49 as the principal balance due, with interest, attorneys' fees and costs. Cowley has answered the appeal requesting that the amount of the judgment be increased to the original amount sued for. We affirm.
By authentic act dated May 31, 1971, Shreveport Packing Corporation conveyed to Shreveport Packing Company, Inc. of Kansas, certain property which it had previously operated as a "packing house". The sale was for $650,000 represented by one promissory note of even date with the Act of Sale made payable to "BEARER" at the *1348 principal banking house of the First National Bank of Shreveport, bearing interest at 8% per annum upon unpaid principal and payable in 120 successive monthly installments of $7,886.45 with each payment to be applied first to interest and then to principal with the payments commencing July 15, 1971 and being due on the same calendar day of each successive month thereafter until fully paid. This note was secured by a vendor's lien and mortgage on the conveyed property.
Cowley Corporation became the holder and owner of this note. Immediately after the execution of the documents pertaining to the sale, the note was placed with First National Bank of Shreveport for collection. Relying solely on the provisions of the "date note", the bank applied the initial ten payments by computing interest on the amount due on the principal balance of the note according to the number of days that had elapsed from the date of the previous payment. The figure which resulted was paid as interest then the remaining portion of the payment was applied to principal.
In May, 1972, either Richard Rock, president of Shreveport Packing or Gilbert Shanley, a partner in the accounting firm of Heard, McElroy and Vestal, accountants for all parties at the time, furnished an amortization schedule to the bank. The bank then contacted Les Cowley, who was president of Cowley at the time about utilizing the amortization schedule to allocate payments to interest and principal. Upon being informed that the terms of the schedule (the number of payments, the rate of interest, the amount of the payments, and the initial principal amount due) were identical to the terms of the note, Mr. Cowley informed the bank that he would agree to the bank's using the amortization schedule as a convenient guide for allocating interest and principal, thereby dispensing with the monthly necessity of computing interest due and principal. It is noteworthy that at this point no payments had been missed with the exception of the first payment which by agreement had been delayed 14 days. All other payments had been made within a few days of the due date. In confirmation of these instructions, J. Hugh Watson, the president of First National Bank, wrote a letter to Mr. Cowley which stated in part:
As you know, when we received the first ten payments of $7,886.45 each from Shreveport Packing Company, Inc., we deducted interest first and applied the balance to principal. Now that we have an amortization schedule, which you have approved, we have reallocated the application of the payments.
We had credited the first ten payments as follows:

Interest $ 45,155.83
Principal 33,708.67
Unpaid principal balance after
 April, 1972 payment 616,291.33

The amortization schedule reflects that the allocation of these ten payments should have been:

Interest $ 42,248.23
Principal 36,616.27
Principal balance 613,383.73

The May payment has been applied in accordance with the amortization schedule, leaving unpaid principal of $609,586.50 which is the amount reflected by the enclosed copy of our credit to your account.
The basic difference in the bank's computation and the computation per the amortization schedule at this point resulted from the first payment reflected on the note being due 45 days rather than 30 days from the date of the note and the fact that this payment was not actually made until July 29, 1971, some 14 days after it was actually due. Additionally, several of the first ten payments were either made or credited a day or two late. The bank's date note method of computation had taken into account these late payments in computing interest due whereas the amortization schedule presumes that all payments are made timely.
Subsequent to this turn of events, Mr. Cowley consented to extensions of time for *1349 payment of the following installments: August 15, 1972; November 15, 1972; December 15, 1972; December 15, 1973; November 15, 1974; December 15, 1974 and June 15, 1974. Between the date on which the note was executed and the date of the final payment actually made by Shreveport Packing in June, 1981, the following payments were made to "catch up" the missed payments: September 12, 1977 (2 extra payments); November 15, 1979 (1 extra payment); January 8, 1980 (1 extra payment); March 12, 1980 (1 extra payment); July 11, 1980 (1 extra payment); November 13, 1980 (1 extra payment).
From May, 1972 until December, 1979 the bank continued to allocate interest and principal as per the amortization schedule. Tax returns on behalf of both parties were filed based on allocations of interest furnished by the bank. In December, 1979, Cowley instructed the bank to correct its books to reflect balances derived from the allocation of interest and principal according to the strict terms of the note and to allocate any further payments in the same fashion. This resulted in a principal balance of $206,807.78 as of December 12, 1979, which differed from the principal balance reflected by the bank in November, 1979 of $167,625.17 based on the amortization schedule. Cowley then reported the additional interest income on its May, 1980 tax return resulting in an increased tax of $12,000.
By check dated June 8, 1981, Shreveport Packing forwarded $7,857.81 as the 120th installment. This was the amount provided for the 120th payment on the amortization schedule rather than the amount provided for in the note. On the check was the following notation: "Cowley payment # 120final payment on $650,000 loan according to amortization schedule." The bank received and deposited this check to the Cowley account, apparently without informing Cowley of the notation on the check.
Shortly thereafter, Cowley again informed Shreveport Packing that a principal balance remained due on the note. Shreveport Packing disputed this, the parties attempted to negotiate their differences to no avail, and this suit was filed on August 21, 1981. At trial, Cowley contended that because the note was a "date note" and certain payments were not made timely, that there was an unpaid principal balance of $48,790.85 as of June 15, 1981. This sum was the figure which resulted when the payments of interest and principal on the note were computed utilizing the "date note method." Conversely, Shreveport Packing contended at trial that Cowley granted "moratoriums" on the payment of certain monthly installments, which were to be without liability for additional interest attributable to the delayed payments. In reality, Shreveport Packing's real contention was that from the outset the extent of its obligation under the note was to pay 120 installments in the amount called for, which regardless of when made, would be allocated to interest and principal pursuant and numerically corresponding to the amortization schedule in the possession of the bank. Additionally, it was contended that the debt had been extinguished by accord and satisfaction or by compromise.
In written reasons for judgment, the trial court found the note in question to be a "date note." It further found that Cowley's instruction to the bank in May, 1972, had the legal effect of authorizing the bank to receive payments from Shreveport Packing to be credited according to the amortization schedule provided the payment was received within a reasonable period of time following the due date and that by allowing the bank to alter the principal balance due Cowley agreed to "give" Shreveport Packing $2,907.60. The trial court heard the testimony of Mr. Cowley and Mr. Rock and rejected Rock's contention that any extensions or "moratoriums" were to be without additional interest accruing because of the delays. It was the court's finding that all Cowley agreed to do was to allow the missing of certain payments without foreclosure and to accept these payments at a later *1350 date. The court further found that Cowley never intended to forgive any interest accruing after May, 1972, but that the actions of Cowley at the time served to solve the problems of accrued interest because of the lateness of the first payment and three other payments prior to that time. The court rejected the contention that the 120th payment constituted an accord and satisfaction.
After arriving at the above findings, the court arrived at the balance due on the note according to the following method of calculation:
(1) After applying the May 1972 payment the principal balance due was $609,586.50.
(2) The dates of receipts of payments as shown by the bank records would be used to credit all payments on the note.
(3) If payment by defendant was made within five (5) days following the due date, it should be treated as if paid timely on the 15th day of the month; if not, interest runs per the strict terms of the note.
(4) A 360 day year should be used.
Based upon that method of calculation, a judgment was signed in favor of Cowley in the amount of $42,487.49, together with interest at the rate of eight (8%) per annum from June 15, 1981, plus attorney fees in the amount of five (5%) per cent on the principal and interest and costs. Additionally, the vendor's lien and mortgage in favor of Cowley were recognized and maintained.
Shreveport Packing appeals contending that the trial court erred in finding:
(1) That the parties intended that the payments on the note were not to be allocated to principal and interest according to the amortization schedule;
(2) That the moratoriums granted by Cowley did not include interest as well as principal;
(3) That the acceptance of the June 8, 1981 payment was not an accord and satisfaction;
(4) That no consideration need be given to Section 3 of the stock purchase agreement entered into by Mrs. Cowley in October, 1978, showing there remained 37 payments of $7,886.45 on the purchase agreement with the last payment due November 15, 1981;
(5) The testimony of Mr. Cowley to be more credible than that of Mr. Rock;
(6) That the Cowley Corporation's vendor's lien and mortgage should be recognized; and
(7) That the note was not paid in full upon receipt of the June 8, 1981 payment.
Cowley answered the appeal contending that the trial court erred in finding:
(1) That Cowley agreed that the Bank was to receive payments from Shreveport Packing and was to credit those payments per the Amortization Schedule provided that the payment was received within a reasonable period of time following the due date;
(2) The principal balance then due on the note to be $613,383.73 before the May, 1972 payment and $609,586.51, a difference of $2,907.61;
(3) That the balance due on the note should be calculated on a principal balance of $609,586.50 from May, 1972, and if payments were made within five days following the due date the payment should be treated as if paid timely on the 15th of the month; if not, it should run per the strict terms of the note.
Shreveport Packing contends that in spite of the specific terms of the note providing that payments were to be due on the 15th day of each month, that the parties agreed at the outset to abide by the amortization schedule thereby amortizing payments accordingly regardless of when paid. It is further contended that the "moratoriums" or extensions subsequently granted by Cowley were without additional interest which would have become due as a result of the delayed payments. Viewing Shreveport Packing's argument as a whole, it is obviously *1351 its position that since the amortization schedule provides for no specific date of payment that as long as 120 payments are made and accepted in the amount specified by the schedule, that the debt would be retired regardless of whether or not the installments were paid timely.
Parol or extrinsic evidence is inadmissible to show a prior or contemporaneous agreement that a note in the ordinary form providing for the payment of a certain sum of money, may, or should be, paid or discharged in some other mode or manner, or in some other medium, than that specified on the face of the instrument. Clasen v. Excel Finance Causeway, Inc., 170 So.2d 924 (La.App. 4th Cir.1965). Therefore, Shreveport Packing is precluded from claiming by way of parol or extrinsic evidence that the parties intended from the outset that untimely or missed payments would be allocated strictly in accordance with the amortization schedule without incurring additional interest.
Our review of the record compels us to conclude that the trial court was correct in its finding that Cowley simply agreed to allow the bank to allocate interest and principal on timely payments on the basis of the amortization schedule for the sake of convenience. Had the payments been made timely, then [with the exception of the first payment which was due 45 days after the date of the note] the allocations to interest and principal would have been the same whether based on the terms of the note or the amortization schedule. However, when payments were untimely or missed, then the utility and convenience of the amortization schedule ceased to be applicable and the bank should have ignored the schedule and reverted to its prior method of computation in accordance with the date note method.
Shreveport Packing next argues that the trial court erred in concluding that the "moratoriums" and/or extensions granted by Cowley did not include a forgiveness or remission of additional interest. After assessing the credibility of Mr. Rock and Mr. Cowley, the trial court specifically rejected the contention that Mr. Cowley agreed to allow any missed payments to be "made up" without additional interest accruing as a result of the delayed payments. Voluntary remission is a method by which obligations are extinguished. La.C.C. Art. 2130. An undisputed claim may be discharged in whole or in part by voluntary remission. No consideration is required and the absence of a dispute is wholly unimportant. All that is required under the remission articles [La.C.C. Arts. 2199, et seq.] is a finding that the creditor intended to remit his claim or that he estopped himself to claim the contrary. Arender v. Gilbert, 343 So.2d 1146 (La.App.3d Cir.1977). While the remission of a debt cannot be revoked by a creditor, remission is never presumed unless it clearly appears that the creditor intended it. The burden of proving remission, express or tacit, rests with those claiming its benefit. Succession of Martin, 335 So.2d 494 (La.App.2d Cir.1976). Our review of the record convinces us that the trial court was not clearly wrong in finding that Shreveport Packing failed to prove a remission or forgiveness of additional interest on the extended payments.
It is next contended that any dispute regarding the amount due on the note was compromised when Shreveport Packing entered into an agreement with Mrs. Katherine Cowley, the wife of Les Cowley, to purchase her stock interest in Shreveport Packing Company of Kansas, Inc. While Mr. Cowley did discuss settlement of the disputed principal balance on the note in connection with the purchase of Mrs. Cowley's stock, Mr. Cowley testified that the terms he discussed with Rock were $100,000 in cash. Admittedly, Mrs. Cowley subsequently agreed to and did accept a note for $120,000. Although the agreement between Shreveport Packing and Mrs. Cowley does refer to the remaining balance on the *1352 $650,000 debt as being 37 payments in the amount of $7,886.45 each with the last payment being due November 15, 1981, the Cowley Corporation was not a party to the agreement. Mrs. Cowley only signed it in her individual capacity. Therefore, the agreement relied upon could not bind Cowley nor could it result in a compromise of this dispute. In Salling Wiping Cloth Co. v. Sewell, Inc., 419 So.2d 112 (La.App. 2d Cir. 1982) we stated:
LSA-C.C. Art. 3071 provides the definition of "compromise" in Louisiana. A compromise is an agreement made for the purpose of preventing or ending a lawsuit in which two or more persons "adjust their differences by mutual consent". As LSA-C.C. Art. 3071 further provides, the contract of compromise is preferred by the parties to the hope of gaining, balanced by the danger of losing. The contract of compromise must be reduced to writing or recited in open court, and of course the contract of compromise, like any other conventional obligation under the Civil Code, requires consent and capacity. Other crucial codal provisions stipulate that compromises "regulate only the differences which appear clearly to be comprehended in them," and that compromises have the legal efficacy of judgments, possessing as they do "a force equal to the authority of thing adjudged". [Footnotes omitted.]
Because Mrs. Cowley did not sign the agreement in her capacity as an officer of Cowley, there was no capacity or consent by Cowley to a compromise. Furthermore, there was no written agreement which clearly comprehended that the difference of the disputed balance of the $650,000 note would be regulated. Additionally, the agreement relied on by Shreveport Packing has not even been honored, and any alleged compromise contained therein would fail for lack of consideration.
Shreveport Packing finally contends that the trial court erred in finding that the acceptance of the June 8, 1981 check by the bank did not result in an accord and satisfaction. Although accord and satisfaction is not founded in statutory law in Louisiana, it has been adopted by our courts. In order for the doctrine to apply a debtor must tender payment to the creditor in full satisfaction of a disputed claim, and the creditor must in turn accept the tender. As in any other contract, acceptance of the offer must be by informed consent. Whether the creditor was fully informed of the nature of the compromise offered by the tender must be determined by the circumstances. Louisiana National Bank of Baton Rouge v. Heindel, 365 So.2d 37 (La. App. 4th Cir.1978). The creditor must fully understand and be aware that if payment is accepted, the claim will be deemed to have been paid in full. Pieri v. Dimaggio, 331 So.2d 59 (La.App. 4th Cir.1976). While the acceptance and cashing of a check for an amount less than that claimed when tendered as full payment constitutes accord and satisfaction and extinguishes the entire debt, the question of whether the check had been tendered and accepted as full payment is a matter of fact. Terra Trucks, Inc. v. Weber, 346 So.2d 275 (La.App. 4th Cir. 1977). However, if the tender itself clearly sets forth that the lesser sum is offered in full payment of the disputed or unliquidated debt, acceptance of the tender constitutes acceptance of the debtor's offer. Charles X. Miller, Inc. v. Oak Builders, Inc., 306 So.2d 449 (La.App. 4th Cir.1975).
In the instant case, the check in question was accepted by the bank for collection and deposited to the account of Cowley without Cowley's having seen the check. There is no evidence that Cowley had any advance knowledge of the notation on the check or its amount. In rejecting this defense, the trial court concluded that the wording on the check was insufficient to put Cowley on notice that it was even being offered in settlement of the real dispute between the parties and that at best the acceptance of this check would only have been an accord and satisfaction of the *1353 amount of the 120th payment. The trial court did not err in concluding that an accord and satisfaction did not result from this payment.
The Civil Code has provisions which might better dispose of the issue presented here. [See concurring opinions by Judge, now Justice Lemmon in Terra Trucks, Inc. v. Weber, supra; Louisiana National Bank of Baton Rouge v. Heindel, supra.] and compel the same result since the code contemplates an agreement of compromise reduced to writing. There is no written agreement present which regulates a difference clearly comprehended therein. See Salling Wiping Cloth Co. v. Sewell, supra.
Furthermore, the bank received the payment on behalf of Cowley for purposes of collection. Thus, the relationship between Cowley and the bank was that of principal and agent. Wessell Plumbing Company v. Scriber & Curtis, 16 La.App. 505, 134 So. 336 (1931); Davis v. Miller Builders & Developers, Inc., 340 So.2d 409 (La.App.2d Cir.1976). The bank was only the agent for the purpose of collecting the installments. La.C.C. Art. 2997 provides that an agent's power must be express and special for a number of purposes including the power to compromise. Accord and satisfaction is closely akin to the civil concept of compromise. The evidence is clear that the bank had no express or special authority to effect an accord and satisfaction or compromise of the principal balance on behalf of Cowley. See H. O'Connor, Inc. v. J.R. Autenreith, Inc., 343 So.2d 1090 (La.App. 4th Cir.1977). There is no evidence that subsequent to the acceptance by the bank of the check, that action was ratified by Cowley; and in reality, the evidence is directly to the contrary.
Shreveport's contention that the trial court erred in finding the testimony of Mr. Cowley to be more credible than that of Mr. Rock lacks merit. Issues of credibility are best left to the discretion of the trial court because of its better position to observe and evaluate live witnesses. Green v. Farmers Insurance Co., 412 So.2d 1136 (La. App. 2d Cir.1982). Our review of the record reveals no abuse of that discretion.
In its answer to this appeal, Cowley contends tht the trial court erred in concluding that Cowley agreed to forgive $2907.60 in interest which had accrued prior to May, 1972, under the terms of the note itself. While we might have arrived at a different conclusion, we cannot say that under the circumstances presented that the trial court was clearly wrong in concluding that Mr. Cowley's actions and instructions to the bank had the effect of a voluntary remission of any interest differential resulting from the change in the principal balance to correspond at that point to the amortization schedule thus allowing it to be utilized as a convenient guide for allocating future payments provided they were timely made.
Likewise, we cannot say that under the total facts and circumstances presented by this case that the trial court was clearly wrong in holding that any payment credited within five days following the due date on the note should be treated as paid timely. The evidence is unclear as to when the bank actually credited payments all of which were received through the mail; thus, the trial court obviously made allowance for the receipt of mail on week-ends or holidays or payments which might have been received but not credited on the date of receipt. Under these circumstances, this five day "grace" period is not unreasonable.[1]
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
NOTES
[1] This conclusion is also supported by the court's finding that Cowley agreed to accept several of the first ten payments as timely when made only several days late in order to facilitate the use of the amortization schedule as a guide for allocating payments in May of 1972.