PRICE, Judge.
This is an appeal from a judgment of the trial court rejecting plaintiff’s demands for an alleged balance due under a contract with defendant on a finding by the trial judge that a full and final settlement had been effected by the parties prior to the institution of this action.
We affirm the trial court judgment for the reasons hereinafter set forth.
Jesse H. Heard & Sons, Inc., was the general contractor for the construction of the Monroe Civic Center. During the preparation of a bid on this work, quotations were solicited from subcontractors for various phases of the work. After being awarded the general contract, defendant entered into a subcontract with Louisiana Asphalt Company, Inc., through its president, Rip D. Pipes, to perform work on the project described as follows: “furnish and install in accordance with the plans, specifications, and addendums plus alternates all asphalt paving in the amount of $1.85 per square yard.”
At the conclusion of the work, the total square yards of asphalt in place was 78,383 for a total contract price of $145,008.55. During progress of the work defendant paid plaintiff $20,540.76 in response to itemized invoices for specific work performed in connection with preparation of the sub-base. Progress payments based on estimates of the contract work completed were also paid to plaintiff totaling $130,507.70. On October 10, 1967, after the expiration of the forty-five day period for filing of liens, Pipes met with Jesse Hilton Heard, President of the defendant corporation, in Heard’s office to discuss a settlement of the amount owed for all work performed on the project. Although the testimony of these two individuals is conflicting as to the discussion which took place at the meeting, the evidence indicates a dispute ensued as to the amount of extra work plaintiff had performed outside the scope of his contract obligation and the correctness of certain back charges claimed by defendant against plaintiff for faulty work and negligent acts of its employees.
At the conclusion of this meeting a written statement of account was presented *189 to Pipes by Heard showing the total amount earned by plaintiff under the contract, plus extra work charges approved by the defendant, to be the sum of $158,589.95. The statement reflected total previous payments by defendant to plaintiff of $150,788.01. Back charges claimed by defendant against plaintiff in the sum of $2,688.97 were added to the prior payments made, showing a net balance owing to plaintiff of $5,112.97. A check for this amount was tendered to Pipes along with a copy of the statement of account. On October 13, 1967, Pipes contacted Heard and requested additional payment for the sum of $2,210.72, as he had discovered several signed tickets for work performed that he had overlooked at the prior meeting. Defendant issued a check to plaintiff for this amount. Both of these checks were cashed by plaintiff on October 17, 1967.
On December 29, 1967, plaintiff filed this action, claiming a balance remained due and owing of $7,667.41 for work performed under the written subcontract agreement. Defendant answered, denying any sum was owed unto plaintiff and alleged it had overpaid plaintiff by the sum of $15,792.12 through clerical error made by employees and reconvened for this amount.
On trial of the cause plaintiff sought to prove that all work relating to preparation of the sub-base was not within the scope of its written subcontract and that $20,507.77 of the total sum paid to it by defendant was in payment of invoices for specific items of work relating to sub-base work and not a part payment on the contract. Defendant, on the other hand, contended the work relating to sub-base was part of plaintiff’s obligation under the written subcontract and the total of extra work performed outside the scope of the contract amounted to only the sum of $1,269.65. Defendant sought to prove payments made to third parties on plaintiff’s behalf, costs of correction of defective work and costs incurred because of negligent acts of plaintiff’s employees totaling $2,688.97, for which amount it seeks reimbursement.
The trial judge, in his reasons for judgment, concluded that although the language of the section of the general contract and specifications attached thereto indicated the sub-base preparation and site clearing was part of the work described under the section entitled “Asphalt Paving,” the actions of the parties subsequent to the execution of the contract did not reflect they construed the contract in this manner. However, the court found the evidence to show a dispute existed over the balance owed on the contract and the intent of their meeting together on October 10, 1967, was to effect a settlement of the contract amount.
The court was further of the opinion the tender of the check of October 10th for $5,112.97 and the supplemental check of October 13th for $2,210.72 were intended to be in final settlement of all work in connection with the contract and binding on the parties. Relying on the holding of Heines & Peterson v. Prutsman, 162 La. 587, 110 So. 765 (1926), the court rejected both the principal and reconventional demands.
After plaintiff perfected its appeal, defendant filed an exception of res judi-cata in this court based on the same grounds on which the trial court rendered judgment. Under the provisions of La. C.C.P. Article 2163 we may consider this exception filed for the first time in the appellate court should the proof of the grounds on which it is based appear in the record.
La.Civ.Code Article 3071 defines a transaction or compromise thusly:
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
*190 “This contract must be reduced into writing.”
Whether the transaction at issue is referred to as a “compromise and settlement” or an “accord and satisfaction” is of no importance as we understand the definition of these terms. For a discussion of the relation of “compromise” with “accord and satisfaction” see Corbin on Contracts, Chapter 7, Section 1275. Any claim that is satisfied by some substituted performance is discharged by an “accord and satisfaction”. If the claim discharged in this matter was a disputed claim or one in which there is some area of doubt then the transaction is also a “compromise.”
The rules of law on accord and satisfaction pertinent to the issues involved herein are discussed in Corpus Juris Secundum as follows:
“An accord is in essence a contract or agreement, and accord and satisfaction is founded and dependent on, and results from, a contract, express or implied, between the parties, and occurs only where the parties intend it and mutually assent to it.” 1 C.J.S. Accord and Satisfaction § 3 at p. 468.
“No particular form of words is necessary to the validity or effectiveness of a contract of accord, and it is not essential that the word 'settle’ or 'settlement' be employed, the material matter being the legal effect of the words that are used and the acts that are done by the parties.” supra at p. 470.
“It follows that, for a transaction to constitute an accord and satisfaction, it must be intended by the parties to have that effect, and so it has sometimes been said that accord and satisfaction ordinarily involves purely a question of intention; at the least, intention is a controlling factor, and so must be clearly manifested, and is to be determined from all the circumstances attending the transaction.” supra § 6 at pp. 477-478.
“Where, however, one accepts something tendered to him by another in settlement and fulfillment of the latter’s obligation to him, knowing or being bound to know that such other is tendering it in full satisfaction of such obligation, an accord and satisfaction is effected, provided such acceptance or assent is voluntary, and provided both parties act knowingly, or with knowledge of all the pertinent facts, even though the creditor acts under a misapprehension as to the legal effect of his acceptance, and does not understand or believe that it will effect an accord and satisfaction.” supra § 7 at p. 479.
“So, to effect an accord and satisfaction of a claim * * * it is necessary, * * * that the offer or tender by the debtor be made in full settlement and satisfaction of the claim or demand, and be accompanied by such acts or declarations as amount to a condition that the money, if accepted, is to be accepted as, and to constitute, full satisfaction, and that the offer be of such character that the creditor is bound to understand therefrom that if he takes the money offered, he takes it subject to such condition.” supra § 33 at pp. 522-523.
“It is not essential, however, that the condition attached to the offer be express, or that the debtor expressly declare that it is meant to be in full settlement, for circumstances may show as conclusively as language that this is meant, and an implied condition is sufficient.” supra § 33 at p. 524.
The evidence in the record clearly supports the trial judge’s finding that a disagreement existed between the parties bceause of unsigned tickets and charge backs caused by faulty work and negligent acts of plaintiff’s employees. We think the evidence as a whole shows the purpose of the meeting on October 10th was to attempt to settle all matters connected with the work performed under the contract.
*191 The testimony of Hilton Heard is to the effect he considered this transaction of October 10th to be a full and final settlement with plaintiff. He explained the additional payment made on the 13th of October as a further attempt to complete the settlement of the transaction with plaintiff.
The testimony of Pipes strongly indicates he understood the statement of account prepared by Heard was intended by defendant to be a full and final settlement of the account. We quote his testimony in response to questions under cross-examination.
“Q. And this statement which was made up in the office of Jesse F. Heard and Sons, was that not — that intended to be a complete settlement— statement and settlement of the job?
“A. That might have been Mr. Hilton Heard’s final settlement, sir.
“Q. But I ask you, was not that the purpose of this settlement?
“A. He gave me the check and I went to a lawyer and I asked him should I return this check to Mr. Hilton Heard or should I go ahead and cash it and he said ‘well, you’ve got a payment, I’d go ahead and use the money’ and that’s what I did, sir.
“Q. Did not you intend and keep — both intend when he handed you that check to make up a statement of or a complete settlement of account? Was not this intended as a complete settlement of account?
“A. It could have been on his part, sir.
“Q. Well, you were aware that he intended it that way, were you not?
“A. Well, I guess that’s the reason I went to see my lawyer, to see what I should do next.”
(The record in this case reflects that the attorney referred to in the above quoted testimony is not the present counsel of record).
Defendant tendered an offer of settlement to plaintiff, the terms of which were set forth in the statement of account, and the offer was impliedly accepted by plaintiff by its actions in cashing the check accompanying the statement. The issuance of the additional check does not necessarily indicate the defendant acknowledged the matter had not been settled. It is rather in accord with Heard’s position he would only pay invoices supported by signed tickets and as these were not presented at the time of settlement, it is nothing more than an effort to correct an omission in the final settlement agreement.
We conclude that an accord and satisfaction has taken place by the actions of the parties and the trial judge was correct in rejecting their respective demands.
For the foregoing reasons the judgment appealed from is affirmed at appellant’s costs.