306 So.2d 449 (1975)
CHARLES X. MILLER, INC.
v.
OAK BUILDERS, INC.
No. 6589.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1975.
*450 Irwin R. Sanders, New Orleans, for plaintiff-appellee.
Driscoll & Ramos, Malvern F. Driscoll, New Orleans, for defendant-appellant.
Before LEMMON, STOULIG and MORIAL, JJ.
STOULIG, Judge.
Defendant, Oak Builders, Inc., a general contractor, has appealed a judgment condemning it to pay Charles X. Miller, Inc. $900 wrongfully withheld from the final payment due on a lathing, plastering and stucco subcontract. Appellant contends the trial judge erred by rejecting its defense of accord and satisfaction. We agree and reverse that part of the judgment favorable to plaintiff.
The subcontract price of $16,784 (plus $331 in extras) was partially paid in sums totaling $11,329.20 as work progressed. Partial payments were to be made when appellant was paid by the owner, with the final payment of the balance due upon completion and acceptance of the job. While there remained an unpaid balance on the contract price of $5,785.80, defendant sent plaintiff a check dated August 12, 1971 for $4,126.62 with the notation on its face: "In Full Plaster & Lath Clearview Estates Office Bldg" and on the reverse side, this caveat was typewritten:
"Endorsement acknowledges receipt in full of all money due for Lathing, Plastering and Stucco on the Clearview Estates Office Building."
A statement accompanied this check itemizing the credits that the general contractor had applied against the final payment due on the contract. It included $200 for furring and $559.18 for cleaning the exterior of the building, which the plaintiff failed to do, plus $900 in liquidated damages for delay in performance.
Immediately upon receipt, an associate of Miller's attorney wrote a letter on August 13, 1971 to John Morvant, president *451 of Oak Builders, Inc., advising that his client[1] would be out of the City for approximately ten days and would contact him upon his return. He acknowledged that Miller received the check for $4,126.62 but that "* * * he does not agree that this payment is payment in full for the job * * *." This attorney also communicated the fact he advised Miller not to negotiate the check.
On August 23 1971, plaintiff's attorney wrote another letter advising that Miller had deposited the $4,126.62 check and was making demand for a balance of $1,659.18 on the Clearview job. Before negotiating the check on August 24, 1971, Miller scratched through both restrictive conditions and immediately below inscribed on the reverse side "Partial Payment," followed by the endorsement "Charles X. Miller, Inc."
When the check was tendered, plaintiff's president was aware there was a dispute between his company and the general contractor. Defendant's president Morvant so testified and his statements in this regard are corroborated by documentary evidence. For example, on numerous occasions defendant's superintendent and its president communicated with plaintiff because its performance was not timely. On several occasions, both verbally and in writing, Morvant warned Charles Miller he would back charge him for some of the liquidated damages for unduly delaying performance. Even Miller in his testimony concedes he was so warned while the contract was still being discharged and long before the check was issued.
Morvant also requested plaintiff to clean the exterior of the building after it finished the job, and upon its failure to fulfill its part of the contractual obligation, defendant was required to have his own men do the job. Although Miller's president denied his workmen had not properly cleaned the building, the trial judge accepted Morvant's statement in this regard.
A third source of dispute known to plaintiff before the check was tendered was its failure to complete "furring" work. Even plaintiff acknowledged a credit was due for this lapse and that none was given in its invoicing prior to receipt of the payment in dispute.
Under these circumstances we cannot agree with the trial judge's conclusion the defense of accord and satisfaction could not be maintained because it was not apparent to the litigants at the time of tender there was a dispute. While it may be true plaintiff did not know the exact dollar figure defendant would claim as a credit or back charges against the final payment, he was well aware appellant planned to back charge for the incomplete work and a pro rata of the liquidated damages assessed against Oak Builders under the contract.
In this case the essential elements to maintain the defense of accord and satisfaction[2] have been established, namely: (1) there was a disputed claim between debtor and creditor; (2) the debtor tendered a check for less than the sum claimed by the creditor; and (3) the creditor accepted the tender by negotiating the check. Estoppel by accord and satisfaction, a common law concept judicially incorporated in Louisiana jurisprudence by the Supreme Court,[3] is grounded on basic contractual principles of offer and acceptance.[4] A bona fide dispute prior to *452 tender and negotiation is an indispensable prerequisite because the creditor's acceptance in negotiating the check for a lesser sum than claimed must be an informed consent.[5] Thus where the creditor is not aware of a dispute as to amount a check for less than the entire balance due, submitted in the ordinary course of business with the notation "In Full Payment," cannot operate to discharge the debt if the creditor deposits it without noticing the restrictive condition on its face. Obviously, not being aware the tender was made in full payment the creditor cannot be deemed to have accepted the offer. If however because of transactions between him and the debtor the creditor is apprised of the dispute prior to the tender[6] of payment or if the tender itself clearly sets forth that a lesser sum is offered in full payment of certain disputed items,[7] a negotiation of the check constitutes an acceptance of the debtor's offer. In this case, both by transactions between the litigants prior to mailing the check and by the check and the accompanying statement, plaintiff knowingly negotiated the instrument offered in full settlement. The language is clear and unequivocal. Plaintiff's president, ten days before negotiation, consulted an attorney[8] because it was obvious there was a dispute which the attorney acknowledged in his communication to defendant. The unilateral action of the creditor in changing the endorsement on the reverse side of the check from payment in full to a partial payment and negotiating the altered instrument cannot change the legal import of its acceptance by the payee as an acknowledgment of the payment in full satisfaction of the obligation. As pointed out in Berger v. Quintero, supra:
"* * * If plaintiff was not satisfied with the settlement tendered, he should not have retained the check, and caused it to be certified by the bank upon which it was drawn, but should have returned it, in the absence of a waiver of the condition attached to the remittance. By retaining the check, and causing it to be certified, he is now precluded from rejecting it, and suing defendant upon the entire claim. * * *" 127 So. at 357.
A statement of the law on accord and satisfaction on this particular issue is set forth in 1 C.J.S. Accord and Satisfaction § 6, at page 479:
"* * * Where, however, one accepts something tendered to him by another in settlement and fulfillment of the latter's obligation to him, knowing or being bound to know that such other is tendering it in full satisfaction of such obligation, an accord and satisfaction is effected, provided such acceptance or assent is voluntary, and provided both parties act knowingly or with knowledge of all the pertinent facts, even though the creditor acts under a misapprehension as to the legal effect of his acceptance, and does not understand or believe that it will effect an accord and satisfaction."
Further this concept is expanded in § 33 at pages 522-523:
"So, to effect an accord and satisfaction of a claim or demand by the payment *453 of a part only of the amount claimed, or an amount less than that claimed, it is necessary, in the absence of antecedent agreement or accord, that the offer or tender by the debtor be made in full settlement and satisfaction of the claim or demand, and be accompanied by such acts or declarations as amount to a condition that the money, if accepted, is to be accepted as, and to constitute, full satisfaction, and that the offer be of such character that the creditor is bound to understand therefrom that, if he takes the money offered, he takes it subject to such condition. * * *"
Thus the elements of accord and satisfaction are satisfied. The defense is meritorious.
Finally we turn to the issue raised by plaintiff's answer to the appeal. Our conclusion that accord and satisfaction estops plaintiff's claim for a balance on the Clearview job obviates a consideration of the contention the trial judge erred in allowing defendant a credit of $559 for cleaning the building exterior. Plaintiff again reurges we award it the sum of $122 for a plastering job on the East End School, a separate contract, for which Miller was not paid. The trial judge rejected this claim because the testimony of Charles Miller bearing upon this issue was contradicted by the testimony of the president of Oak Builders. Calling it a "standoff," the district judge held plaintiff failed to carry the burden of proof. There is nothing in the record to warrant our reaching a different result.
For the reasons assigned, the judgment appealed from is reversed in so far as it cast defendant Oak Builders, Inc., in judgment and in all other respects affirmed, costs of this appeal to be borne by appellee.
Reversed in part and affirmed in part.
NOTES
[1] The record indicates it was plaintiff's counsel who was out of town not Miller, although the letter does indicate it was Miller who was was unavailable.
[2] Pontchartrain Park Homes v. Sewerage & Water Bd., 246 La. 893, 168 So.2d 595 (1964).
[3] Berger v. Quintero, 170 La. 37, 127 So. 356 (1930); Davis-Wood Lumber Co. v. Farnsworth & Co., 171 So. 622 (La.App.Orl.1937).
[4] Linda Mercantile Corporation v. Bowers, 230 So.2d 302 (La.App.1st Cir. 1969).
[5] Pipes v. Jesse F. Heard & Sons, Inc., 258 So.2d 187 (La.App.2d Cir. 1972).
[6] Linda Mercantile Corporation v. Bowers, supra.
[7] Berger v. Quintero, supra; Geo. L. Ducros Tile Co. v. Frey Homes, 65 So.2d 621 (La. App.Orl.1953); Brindell-Bruno, Inc. v. Farnsworth and Chambers Co., 154 So.2d 511 (La.App.4th Cir. 1963).
[8] In Pipes v. Jesse F. Heard & Sons, Inc., supra, the court quoted testimony of the creditor to the effect he consulted an attorney after receiving tender of a lesser sum than he claimed as proof of his knowledge there was in fact a dispute.