343 So.2d 1146 (1977)
Frank ARENDER, d/b/a Farm Realty Company, Plaintiff and Appellant,
v.
Jess Carr GILBERT, Defendant and Appellee.
No. 5815.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1977.
Rehearing Denied April 5, 1977.
*1148 Adcock & Dupree by E. Wade Shows and Herschel C. Adcock, Baton Rouge, for plaintiff and appellant.
Falkenheiner & Calhoun by W. C. Falkenheiner, Vidalia, for defendant and appellee.
Before CULPEPPER, DOMENGEAUX and WATSON, JJ.
CULPEPPER, Judge.
This is a suit filed by Frank Arender, a real estate broker, to enforce the bonus clause of a 30-day "exclusive listing agreement" between him and defendant, Jess Carr Gilbert. The exclusive listing agreement provided that plaintiff would receive a commission of $35,000 plus a bonus of one-half of any amounts received in excess of the price set by Gilbert for the sale of certain woodland and timber on the "Black Hawk Plantation". Defendant reconvened against plaintiff seeking return of a $35,000 payment which he made to plaintiff for his services. The basis of the reconventional demand is that plaintiff allegedly breached his fiduciary duty to defendant by representing and having an ownership interest in Three Rivers Farm, Inc., the corporation which purchased the subject property. The trial judge rendered a judgment rejecting the claims of both parties, and both parties appealed.
The litigation arises from a very complex land sale transaction. The trial record and briefs of counsel suggest several issues. The decisive issue, however, is whether the following letter from Arender to Gilbert dated 8/18/1973 constitutes and "accord and satisfaction" which estops Arender from claiming any further compensation under the terms of the July 11, 1973 exclusive listing agreement:
"RE: Agreement between you and myself dated 7/11/73 relative to sale of Black Hawk Plantationland and timber
"Dear Sir:
"I acknowledge my fee to be in the sum of $35,000.00 as a result of the sale to Three Rivers Farm, Inc. dated 8/17/73.
"I hereby accept a note from you in the amount of $35,000.00 to be paid 1/10/1974 (one line of type is marked out at this point) and is full compensation for my services.
 /s/ Frank L. Arender"
This letter was introduced into evidence without objection.
The record shows that Gilbert purchased Black Hawk Plantation for approximately $1,200,000 in February of 1973. It consisted of 9,615 acres of woodland and cleared land situated in the southern part of Concordia Parish along the Mississippi River.
On July 11, 1973, Gilbert entered into an "exclusive listing agreement" with Arender to secure a purchaser for the woodland and timber on Black Hawk Plantation. The agreement specified that 7,532 acres of woodland were to be sold at $140 per acre. The standing timber on Black Hawk Plantation was to be sold for an additional $650,000. The total proposed selling price, therefore, was $1,704,480.
The listing agreement set the credit terms of the sale at "29% Down and the balance in January, 1974." The agreement provided further that Arender was to receive a commission of $35,000, to be paid in January, 1974. Also, the following bonus clause was contained in the listing agreement: "In the event the selling price is more than the above figure, Frank (Arender) is to receive one-half of all over this figure." The agreement was to run 30 days from July 11, 1973.
*1149 After securing the exclusive listing, Arender immediately began contacting potential purchasers. One of these, Dale Rogers, was interested in purchasing only a portion of the plantation for use in his farming operation. He was not interested in purchasing the entire tract offered.
Arender also contacted a Lake Providence attorney, Captan Jack Wyly. Wyly, as Rogers, was interested in purchasing only portions of the land offered. Through the efforts of Arender, Wyly and Rogers met and formed a corporation to purchase the subject property. The corporation was formed on July 19, 1973 under the name Three Rivers Farm, Inc. Its president was Dale Rogers. A total of 300 shares of stock were issued on three certificates. 100 shares were issued to Rogers, 100 shares to his wife, and 100 shares to Wyly's secretary, who held the shares for him. Arender owned no stock in the corporation.
A round of negotiations between Wyly, Gilbert, Rogers and Arender followed. Gilbert's attorney, George Griffing, was also involved in these negotiations. Wyly and Rogers trusted Arender, and often Arender acted as "middle man" between representatives of Three Rivers and Gilbert. Offers and counteroffers were communicated to both parties through Arender. Finally, on July 26, 1973, Three Rivers and Gilbert executed a contract whereby Three Rivers acquired an option to purchase a certain portion of Black Hawk Plantation (about 7,100 acres) for the total sum of $1,798,560. The option price, $50,000, was paid by Three Rivers on July 26, and applied toward the purchase price.
The option agreement stated that the act of sale was to be passed on August 17, 1973, at which time an additional $450,000 was to be paid in cash to Gilbert. The remainder of the purchase price, $1,298,560, was to be represented by a promissory note due on January 5, 1974.
The property described in the option to purchase was not the same property described in the exclusive listing agreement between Gilbert and Arender. During the course of negotiations, Rogers stated that in order to secure financing for the purchase, some cleared land would have to be included in the property sold. In response to Rogers' financing difficulties, Gilbert added about 550 acres of cleared land, but in return, Gilbert retained several hundred additional acres of woodland which he originally intended to sell.
The act of sale was passed on August 17, 1973 substantially in accordance with the terms of the "Option To Purchase." The $450,000 cash payment was in the form of a check drawn on the account of J. E. Jones Lumber Company payable to Three Rivers, which was endorsed to Gilbert by Three Rivers. J. E. Jones Lumber Company stopped payment on its check, however, when its attorney discovered a notice of lis pendens affecting the subject property had been filed by Ricks Lumber Company on August 17. In its petition, Ricks alleged that Arender, acting as Gilbert's agent, had promised to sell certain timber located on Black Hawk Plantation to Ricks for a specified price. The Ricks' suit was eventually dismissed on an exception of no cause of action, but the stop payment order on the check brought the subject sale transaction to a halt.
All of the parties were concerned about the future course of the transaction. On the day after the act of sale was passed, August 18, 1973, Arender, Rogers, Gilbert and his attorney, George Griffing, met at Gilbert's house to determine what course of action they should follow. The initial purpose of the meeting was to determine how the Ricks suit could be dismissed and the notice of lis pendens removed from the record. Other types of negotiations also took place at the meeting, including some negotiations concerning Arender's fee. It is the negotiations regarding Arender's fee that we are concerned with.
Prior to the meeting, Gilbert had become dissatisfied with Arender. Apparently, he thought that Arender was not entitled to his fee. For example, Gilbert testified he considered the listing agreement to be terminated because the land actually sold was not the land described in the listing agreement. *1150 The credit terms of the final sale were also different from those specified in the listing agreement. Additionally, Gilbert testified that shortly after the option to purchase was executed, Arender told him that he had an ownership interest in Three Rivers. (The evidence shows, however, that Arender had no such interest in Three Rivers.) Gilbert testified, and the trial judge concluded, that shortly after the option agreement was executed, Gilbert began negotiating for himself and no longer considered Arender his agent. In summary, Gilbert entered the August 18 negotiations with Arender and others believing that Arender had not fulfilled the terms of the listing agreement, had represented Three Rivers to Gilbert's detriment, and was not entitled to his fee.
The atmosphere at the August 18 meeting was tense. Gilbert testified, and the trial judge concluded, that Arender demanded payment of his $35,000 commission at this meeting. The listing agreement of July 11, 1973 provided that the commission was not due until January, 1974. Gilbert and his attorney, George Griffing, drafted the letter quoted at the outset of this opinion in response to Arender's demand. By way of review, Arender acknowledged in the letter that his fee for the sale of Three Rivers was $35,000. Arender further stated in the letter that he accepted a note from Gilbert in the amount of $35,000 to be paid 1/10/74, the note being "full compensation for my services." The letter made specific reference to the exclusive listing agreement of 7/11/73, but did not mention the "one/half over" bonus provision. The question before us is whether this letter constitutes an "accord and satisfaction", which would bar Arender's claim to any further compensation under the terms of the July 11 exclusive listing agreement.
Our courts have adopted the common law doctrine of accord and satisfaction. Each of these three conditions must be present for its application: (1) An unliquidated or disputed claim. (2) A tender by the debtor. (3) An acceptance of the tender by the creditor. Young v. White Stores, Inc., 269 So.2d 266 (La.App.3rd Cir. 1972) and cases cited therein. An additional prerequisite to settlement by accord and satisfaction is that the creditor must understand that if the reduced payment is accepted his claim will have been paid in full. Antoine v. Elder Realty Company, 255 So.2d 625 (La.App.3rd Cir. 1971). If the tender itself clearly sets forth that the lesser sum is offered in full payment of the disputed or unliquidated debt, however, acceptance of the tender constitutes acceptance of the debtor's offer. Charles X. Miller, Inc. v. Oak Builders, Inc., 306 So.2d 449 (La.App.4th Cir. 1975).
The August 18 letter executed by Arender, accompanied by Arender's acceptance of the tendered note for $35,000, constitutes an accord and satisfaction. The requirements of tender of payment by the debtor and acceptance by the creditor are obviously satisfied. The further requirement that the debt be unliquidated or disputed is also satisfied.
The debt was, in fact, unliquidated and disputed. Though there is some question as to whether Gilbert informed Arender of all of the reasons that he felt would prevent Arender from receiving the full amount of the fee contemplated by the listing agreement, there is no doubt that the fee was disputed.
The fee was the subject of negotiations between Gilbert and Arender at the August 18 meeting. It was Arender who first brought up the subject by demanding payment of the $35,000 commission at the meeting. By the terms of the exclusive listing agreement, the commission payment was not due until January, 1974. Apparently, Arender opted to take a $35,000 note as full compensation for his services rather than risking both his commission and his "one-half over" on successful resolution of the transaction in accordance with the terms of the original listing agreement. In other words, Arender bargained away his chances to collect a commission plus a bonus by accepting a $35,000 note tendered as full compensation before any compensation was *1151 due under the terms of the listing agreement. The note was paid at maturity.
The present case is not one of those where the debtor scrawls "in full settlement" or other similar words on his check and sends it off to the distant creditor, hoping that the creditor will unwittingly cash it and effect an accord and satisfaction. Arender and Gilbert were literally negotiating at arms' length when the tender was made. The tender was apparently the subject of some discussion between the two. The bargaining process was operative. Its end product was the accord and satisfaction agreement.
Arender argues that no dispute as to the amount of money owed to him existed when Gilbert tendered the $35,000 note as full compensation for his services. The record supports this argument to the extent that there was no discussion as to the "one-half over" provision of the contract at the August 18 meeting. There was, however, a dispute as to whether any portion of Arender's fee, either the commission or the one-half over bonus, was due.
Even if we assume that Arender was not aware of any dispute concerning the amount of his fee before August 18, he would have been put on notice that such a dispute existed by the very terms of the letter which he signed on that day. The letter made specific reference to the exclusive listing agreement of July 11, 1973. In unambiguous terms, Arender acknowledged in the letter that his fee as a result of the sale to Three Rivers Farm, Inc. was $35,000. It is significant that he acknowledged his fee to be in the amount of $35,000 rather than acknowledging his commission to be in that amount. The term "fee" is much broader than the term "commission". "Fee" can reasonably be deemed to include all of the compensation to be earned by Arender as a result of the sale, including the "one-half over" bonus stipulated in the listing agreement. The broad scope of the letter and its intended effect become even clearer when the second paragraph of the letter is considered along with the first paragraph. In the second paragraph, Arender acknowledges acceptance of the note as "full compensation" for his services.
Though the letter does not mention the "one-half over" provision, its intent could hardly be more clearly expressed. The letter was intended as an "accord and satisfaction" to bar any future claim for compensation based upon the terms of the July 11 exclusive listing agreement.
In the Charles X. Miller case, supra, the court quoted from 1 C.J.S. Accord and Satisfaction § 6, P. 479, to explain that an accord and satisfaction could be effected even though the creditor may have acted under a misapprehension as to the legal effect of his acceptance or may not have understood or believed that it would have the effect of accord and satisfaction, provided that the creditor acted knowingly or with knowledge of all the pertinent facts. Arender was intimately involved in all aspects of the transaction and had knowledge of all of the pertinent facts. Furthermore, any fact or opinion unknown to him could have been easily ascertained by simply asking one of the parties present at the August 18 meeting.
The question of whether a debt is "disputed" is a factual one which must be decided on a case by case basis by reference to the record as a whole. In the present case, we determine a dispute existed. Under a similar factual situation in Hancock v. Lincoln American Life Insurance Company, 278 So.2d 561 (La.App.1st Cir. 1973), the court determined that no dispute existed and held the doctrine of accord and satisfaction was inapplicable. In Hancock, the court quoted at length from the decision of our Supreme Court in Pontchartrain Park Homes v. Sewerage & Water Board, 246 La. 893, 168 So.2d 595. A portion of the quotation from Pontchartrain Park dealing with the requirement of a "dispute" for accord and satisfaction follows:
"Unquestionably the creditor must have knowledge, actual or imputed, of the existence of a dispute regarding the amount due. It is not necessary, however, that there be haggling over a fixed contract price to either constitute a dispute or *1152 impute knowledge thereof to the creditor. It suffices that actual knowledge be shown or circumstances demonstrated from which knowledge may reasonably be inferred." (Emphasis added) 278 So.2d 561 at 564
In the present case, it was Arender who provoked the dispute concerning his fee by demanding its payment four months before it would have been due. There was no haggling over the exact amount due, but Arender had knowledge of the facts upon which Gilbert based his contention that Arender was not entitled to a fee. Furthermore, the contents of the letter signed by Arender on August 18 charged him with imputed knowledge that some dispute concerning the amount of his fee existed. The answers to any questions he may have had were within his grasp. He failed, either intentionally or unintentionally, to avail himself of these answers.
"Accord and satisfaction" is an affirmative defense which must be pleaded in the answer. LSA-C.C.P. Art. 1005 and Official Comment E to that article. Defendant pleaded facts constituting the basis for the defense of accord and satisfaction in paragraphs 4 and 15 of his answer, though he did not label the defense "accord and satisfaction." Furthermore, the letter which affected the accord and satisfaction was introduced into evidence without objection, thereby enlarging the pleadings to include the defense. LSA-C.C.P. Art. 1154; Conques v. Hardy, 337 So.2d 627 (La. App.3rd Cir. 1976); Edwards v. Edwards, 282 So.2d 858 (La.App.1st Cir. 1973), writ refused, 284 So.2d 777 (La.1973). Therefore, Arender's assertion that Gilbert cannot urge the affirmative defense of accord and satisfaction because he failed to plead it in his answer is without merit.
The same result could be reached through application of the provisions of our Civil Code dealing with voluntary remission of debt. LSA-C.C. Art. 2199, et seq. The application of the principle of remission in cases such as the present one is explained in Obligations, J. Denson Smith, 26 La.L.Rev. 497 and 498. There, Professor Smith explains that under the common law theory, the significance of the "dispute" requirement for accord and satisfaction lies in the fact that in the absence of a dispute, the receipt by the creditor of less than the amount due will not serve as consideration to discharge the remainder. In our civilian system, however, although a disputed claim may be compromised by way of settlement, an undisputed claim may also be discharged in whole or in part by voluntary remission. No consideration is required and the absence of a dispute is wholly unimportant. All that is required under the remission articles is a finding that the creditor intended to remit his claim or that he estopped himself to claim the contrary.
In the present case, the letter of August 18 shows a clear and convincing intent to effect a voluntary intentional remission of any part of the debt (broker's fee) beyond the acknowledged total fee of $35,000.
Having disposed of Arender's claim, we move now to Gilbert's reconventional demand for return of the $35,000 fee paid to Arender pursuant to the terms of the August 18 accord and satisfaction agreement. The alleged grounds for the reconventional demand are that (1) Arender breached his fiduciary duty to Gilbert by representing Three Rivers in negotiation preceding the July 26 "Option To Purchase", and (2) Arender allegedly acquired an ownership interest in Three Rivers prior to execution of the option to purchase. The evidence in the record supports neither of these assertions. To the contrary, the evidence shows that Arender had no ownership interest in Three Rivers and received no compensation from them.
The most conclusive answer to Gilbert's reconventional demand is that he is also barred by the accord and satisfaction between the parties stated in the August 18, 1973 letter quoted above.
We conclude there is no merit to Gilbert's reconventional demand for return of the $35,000 fee which he paid to Arender.
*1153 For the reasons assigned, the judgment of the district court is affirmed. The costs of this appeal are to be shared equally by Arender and Gilbert.
AFFIRMED.