624 So.2d 981 (1993)
Gary D. HARMON, Plaintiff-Appellee,
v.
J. Gaylord SIMON, et al., Defendants-Appellants.
No. 92-1422.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
*982 Robert Paul Brenham, Baton Rouge, for J. Gaylord Simon etc.
Paul Debaillon, Lafayette, for U.S. Auctions, Inc.
Lawrence Sandoz Jr., Opelousas, for FNB of St. Landry.
Before GUIDRY, THIBODEAUX and COOKS, JJ.
GUIDRY, Judge.
In this declaratory judgment suit, cross-claim plaintiff, U.S. Auctions, Inc., appeals a judgment of the trial court dismissing its demands against Gary D. Harmon and First National Bank of St. Landry Parish (now First Acadiana National Bank). For reasons different from those expressed by the trial judge, we affirm.

FACTS
This case arises out of a dispute between the three shareholders of a closely held corporation, U.S. Auctions, Incorporated. Gary D. Harmon, J. Gaylord Simon and Scott A. Clause, all auctioneers, formed U.S. Auctions, Inc. in September 1987 for their mutual benefit and in hopes that by pooling their resources they would be able to attract larger auctions. The articles of incorporation were executed before an attorney in Lafayette, but no by-laws were adopted and no stock was issued.
According to the record, Harmon, Simon and Clause actually started discussions concerning formation of the corporation in about May of 1987. No record was kept of when these discussions were held or of exactly what was discussed. The three shareholders continued this practice of holding informal discussions about business even after the corporation was formed. Therefore, except for a specially called meeting over the dispute we address herein, which was held on September 30, 1988, there is no evidence of any meetingsno notices, no minutes and no resolutions.
Before the formation of U.S. Auctions and at least through the events discussed herein, Harmon was the sole proprietor of another auctioneering firm, Allied Auctioneers of Acadiana. On August 3, 1987, prior to the incorporation of U.S. Auctions, Harmon secured the job as auctioneer for the Bankruptcy Court in a number of cases involving Sutton Investments, Inc. and Robert B. Sutton. In order to generate publicity for U.S. Auctions, the Sutton auction to be held in Tulsa, Oklahoma, was conducted in the name of U.S. Auctions, Inc. Harmon, Clause and Simon agreed that Harmon, because he had obtained the business before U.S. Auctions was formed and as acquiring auctioneer, would get 75% of the commission from this sale and that Clause and Simon would each get 12½% of the commission. The Sutton auction was held December 2, 1987.
Between September 1987 and July 1988, a number of non-bankruptcy auctions were handled by U.S. Auctions. In each of these auctions the net commission earned was split one-third (1/3) each to the three shareholders. In June 1988, Harmon, through the same bankruptcy trustee, Hugh W. Thistlethwaite, Jr., who had hired him to handle the Sutton auction, was able to acquire another large bankruptcy sale, Keg Arabians. The issue in this matter involves the division of the commission on the Keg Arabians auction which was held in late July 1988.
Harmon contends that the commission on the Keg Arabians sale and any other bankruptcy sale was to be split 75% to the acquiring auctioneer, in this case Harmon, and 12½% each to Clause and Simon, the non-acquiring auctioneers, just as in the Sutton matter. Simon and Clause, on the other *983 hand, argue that except for the Sutton auction, which Harmon procured before U.S. Auctions was formed, all auction commissions, regardless of source or type, were to be split equally among the three shareholders.
The gross commission allowed by the bankruptcy court for the Keg Arabians sale was $45,017.63. In addition, U.S. Auctions submitted a bill to the bankruptcy court for $17,518.66 in reimbursable expenses. In addition to those expenses, Harmon and/or his company, Allied Auctioneers had loaned U.S. Auctions $3,871.11 to cover non-reimbursable expenses. Either the day of the sale or the day after, Harmon, Simon and Clause met to discuss the splitting of the Keg Arabians commission. They were not able to reach any agreement.
On September 19, 1988, the day preceding the hearing in bankruptcy court to approve the auctioneer's commission in the Keg Arabians case, Simon hand delivered a notice to Harmon advising him of a meeting of the board of directors and shareholders of U.S. Auctions scheduled for September 30, 1988.
On September 20, 1988, the bankruptcy court approved the fees and expenses requested by U.S. Auctions in the Keg Arabians sale at a hearing held in Opelousas. Simon and Clause were present at the hearing with their attorney, Robert Brenham. After the hearing, Simon delivered a letter to Thistlethwaite informing him that the compensation payable to U.S. Auctions should only be paid to Simon as treasurer of the corporation. Thistlethwaite explained this to Harmon, who then provided Thistlethwaite with a letter informing him that the commissions and expenses should only be paid to U.S. Auctions through its president, Harmon.
Thistlethwaite subsequently delivered two bank checks dated September 20, 1988, payable to U.S. Auctions and drawn on the American Bank & Trust Company of Opelousas, to Harmon. The first check, in the amount of $17,518.62, represented the reimbursable expenses payable from the Keg Arabians auction, and the second, in the amount of $45,017.63, represented the commission earned by U.S. Auctions on the sale. Harmon went to American Bank & Trust and exchanged the checks issued by the bankruptcy court for money orders drawn on the bank and payable to U.S. Auctions.
Harmon then proceeded to First National Bank of St. Landry Parish (now First Acadiana National Bank) where he deposited both money orders into his Allied Auctioneers account. The expense money order was endorsed by Harmon as president of U.S. Auctions; however, the money order for the commission was inadvertently not endorsed. Because the Bank employees knew Harmon to be president of both Allied Auctioneers and U.S. Auctions, they stamped the unendorsed check "Credited to the account of the within named payee in accordance with payee's instructions. Absence of endorsement guaranteed. The First National Bank of Opelousas, La. 84-223". U.S. Auctions had no account with First National Bank.
Harmon then used the funds deposited in his Allied Auctioneers account to pay the outstanding expenses from the Keg Arabians auction and to purchase two cashier's checks in the name of U.S. Auctions in the amount of $5,074.50 eachone check payable to Simon and the other to Clause. On September 30, 1988, Harmon attended the special meeting of U.S. Auctions at Simon's home in Lafayette where he hand delivered the checks along with a letter to each Simon and Clause (see Appendix for a copy of letter to Simon; Clause's letter is identical except for the transposition of name and address where appropriate) accounting for all funds received and disbursed in connection with the Keg Arabians sale. The letters clearly show that Harmon was tendering the checks for the lesser sum (12½% of the net commission) in full satisfaction of the disputed amount owed, i.e., Simon's and Clause's share of the Keg Arabians commission. Both Simon and Clause accepted and negotiated their respective checks.
In October 1988, Harmon filed this declaratory judgment action praying that the court find the following:
(a) contracts existed between petitioner and U.S. Auctions and between petitioner, *984 Simon and Clause as shareholders of U.S. Auctions, for the division of bankruptcy auction commissions according to the terms set forth above [i.e., 75% to the acquiring auctioneer and 12½% to each of the non-acquiring auctioneers]; (b) that petitioner has fully performed all of his obligations under those contracts as of the date of judgment and that all funds payable under those contracts have been properly distributed; (c) that petitioner owes no money or contractual performance to the defendants of any kind arising out of his contractual and legal relationships with the defendants in regard to the factual matters set forth above; (d) that First National owes no money or obligation to Simon, Clause or U.S. Auctions for any reason arising out of the factual matters set forth above; and (3) that no legal or factual ground exists for the actions of Simon and Clause in making out criminal complaints against your petitioner for the alleged misappropriation of corporate funds.
The defendants named in the declaratory judgment action were Simon, Clause, U.S. Auctions and First National Bank. Simon, Clause and U.S. Auctions opposed the granting of declaratory judgment and U.S. Auctions filed a cross-claim against First National Bank claiming that Harmon and Katherine Leger, an employee of First National Bank, "acted in concert" to deprive U.S. Auctions of funds which were deposited into the Allied Auctioneers account, i.e., Harmon's business account.

ACTION OF THE TRIAL COURT
In his reasons for judgment, the trial judge stated:
The burden of proof is on the plaintiff, Mr. Harmon, to prove his case by a preponderance of the evidence. This Court finds that there was no agreement reached by these parties to divide the commissions in the Keg/Arabian Bankruptcy sale as contended by Mr. Harmon.
If U.S. Auctions, Inc. is a valid corporation, when Mr. Harmon took the check made payable to the corporation, endorsed it, and deposited it into an account which is wholly owned by him, he used that money in such a way that breached the fiduciary duty which he owes to the corporation. This Court finds that plaintiff has failed to prove by a preponderance of the evidence the allegations of the declaratory judgment action....
[And in regard to the cross-claim:]
This Court finds that the cross-claimants have not proved their case by a preponderance of the evidence. There was no testimony introduced to support this allegation....
Both claims were dismissed.
Only the cross-claim of U.S. Auctions against First National Bank is before this court on appeal.

THE LAW
On appeal U.S. Auctions argues that Harmon and First National Bank should be liable to it for $45,017.63 inasmuch as the Bank paid an instrument payable to U.S. Auctions to Harmon over an unauthorized endorsement and that such action was not in good faith and in accord with reasonable standards of the banking industry.
The Bank argues that the judgment of the trial court should be affirmed inasmuch as when Simon and Clause accepted and negotiated the cashier's checks tendered as the 12½% commission Harmon claimed was due each of them, any further claim by them and hence by U.S. Auctions was extinguished by accord and satisfaction.
At the outset we note that accord and satisfaction is an affirmative defense that must be specially pleaded. In this case, the defense was not pled at the trial level, however, during the trial evidence was introduced, without objection, of actions by Harmon, Simon and Clause which effected an accord and satisfaction. Since such evidence was received without objection, it enlarged the pleadings to include such a defense. Arender v. Gilbert, 343 So.2d 1146 (La.App. 3rd Cir.1977).
*985 Generally, when an affirmative defense has not been pleaded, but an opposing party fails to object to the introduction of evidence and/or testimony bearing on the affirmative defense, and the evidence is not relevant to other issues raised in the pleadings, the pleadings are considered to have been enlarged to include the affirmative defense. Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Company, Inc., 525 So.2d 1157 (La.App. 3rd Cir.1988), writ denied, 530 So.2d 570 (La.1988); EMW, Jr. v. JPM, 583 So.2d 511 (La.App. 2d Cir.1991). Such was the situation in this case.
The doctrine of accord and satisfaction and its application in Louisiana law was succinctly discussed by our brethren of the Second Circuit in Cowley Corporation v. Shreveport Packing Company, Inc. of Kansas, 440 So.2d 1345 (La.App. 2d Cir.1983), writ denied, 444 So.2d 122 (La.1984), wherein the court stated:
... Although accord and satisfaction is not founded in statutory law in Louisiana, it has been adopted by our courts. In order for the doctrine to apply a debtor must tender payment to the creditor in full satisfaction of a disputed claim, and the creditor must in turn accept the tender. As in any other contract, acceptance of the offer must be by informed consent. Whether the creditor was fully informed of the nature of the compromise offered by the tender must be determined by the circumstances. Louisiana National Bank of Baton Rouge v. Heindel, 365 So.2d 37 (La.App. 4th Cir.1978). The creditor must fully understand and be aware that if payment is accepted, the claim will be deemed to have been paid in full. Pieri v. Dimaggio, 331 So.2d 59 (La.App. 4th Cir.1976). While the acceptance and cashing of a check for an amount less than that claimed when tendered as full payment constitutes accord and satisfaction and extinguishes the entire debt, the question of whether the check had been tendered and accepted as full payment is a matter of fact. Terra Trucks, Inc. v. Weber, 346 So.2d 275 (La. App. 4th Cir.1977). However, if the tender itself clearly sets forth that the lesser sum is offered in full payment of the disputed or unliquidated debt, acceptance of the tender constitutes acceptance of the debtor's offer. Charles X. Miller, Inc. v. Oak Builders, Inc., 306 So.2d 449 (La.App. 4th Cir.1975).
See also Arender v. Gilbert, supra; Creative Marketing Sales v. Rayborn, 615 So.2d 1107 (La.App. 5th Cir.1993).
The case before us is a classic example of accord and satisfaction. There was a genuine dispute between the parties as to whether Simon and Clause were due 33 1/3% of the Keg Arabians' commission as they claimed or 12½% as claimed by Harmon. A check for 12½% of the commission was tendered to each along with a letter from Harmon (see Appendix) clearly expressing that the checks for the lesser amount were tendered as full payment/satisfaction of the disputed claim. While Clause and Simon may not have been pleased with the tender, the fact remains that they, even after reading the letters, accepted and negotiated the checks.
Since we find the tender clearly spelled out the checks for the lesser sum (12½%) were being offered in full payment of the disputed commission, Simon's and Clause's acceptance and negotiation of the checks constituted accord and satisfaction and extinguished the disputed claim. With the extinguishment of Clause's and Simon's claim, any cause of action by U.S. Auctions against Harmon and the Bank likewise must fall.
For the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant, U.S. Auctions, Inc.
AFFIRMED.
*986
 APPENDIX
 GARY D. HARMON
 123 BABE ST., APT. B
 OPELOUSAS, LA 70570
 September 29, 1988
 HAND DELIVERED
J. Gaylord Simon
113 Judge Drive
Lafayette, LA 70509
 RE: U S Auctions, Inc.
 Auctioneer's Fee for Keg Arabians,
 Inc. and Ken & Pat Guilbeaux
Dear Gaylord:
 Enclosed herewith please find Cashier's Check in the sum of $5,074.50, payable to your
order, drawn on the First National Bank of St. Landry Parish, for the account of U S
Auctions, Inc.
 This payment represents your twelve and one-half (12.5%) percent share of the net
auctioneer's fee for the Keg Arabians, Inc/Guilbeaux auction pursuant to our contractual
agreement whereby the fees were to be split according to the same percentage established for
the Sutton Auction in Tulsa.
 I have separately paid Scott Clause his pro rata share of twelve and one-half (12.5%)
percent of the net fees. I have reimbursed Allied Auctioneers and myself for the expenses of
the auction in the total amount of $21,940.23 and have disbursed by pro rata share of the fees.
 The recapitulation of the receipts and disbursements of the moneys received by U S
Auctions, Inc. for this case is as follows:
RECEIPTS
Fees $45,017.63
Reimbursements 17,518.62
 __________
 Total Receipts $62,536.25
DISBURSEMENTS
Allied Auctioneers-Expenses $18,543.94
Gary Harmon-Expenses 3,396.29
Gary Harmon-75% of Fees 30,447.02
Gaylord Simon-12.5% of Fees 5,074.50
Scott Clause-12.5% of Fees 5,074.50
 __________
Total Disbursements $62,536.25
Balance Remaining $ 0.00