# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# WCA 16-611


**MARION E. BARTLEY**

**VERSUS**

**GARDEN VIEW ASSISTED LIVING**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 9
PARISH OF IBERIA, NO. 14-08304
ELIZABETH CLAIRE LANIER, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

# BILLY HOWARD EZELL
# JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and D. Kent Savoie, Judges.


**AFFIRMED.**


**Saunders, J., dissents and assigns reasons.**

**Matthew D. McConnell**
**Matthew R. Reed**
**P.O. Box 52024**
**Lafayette, LA 70505-2024**
**(337) 347-6404**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Marion E. Bartley**

**Jeremy N. Morrow**
**Jaclyn Bridges Bacon**
**1001 W. Pinhook Rd., Suite 200**
**Lafayette, LA 70503**
**(337) 237-7000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Garden View Assisted Living**

**EZELL, Judge.**

Marion Bartley (Ms. Bartley) appeals the finding of the workers' compensation judge that she forfeited her rights to workers' compensation benefits by committing fraud under La.R.S. 23:1208. For the following reasons, we hereby affirm the decision of the workers' compensation judge.

Ms. Bartley was employed as a cook at Garden View Assisted Living (Garden View). On August 19, 2014, she fainted and collapsed in the kitchen. She was sent to the hospital via ambulance, as the staff at Garden View believed she had suffered a stroke. Luckily for Ms. Bartley, a stroke or cardiac event was ruled out, though she was eventually found to have a torn supraspinatus tendon in her shoulder. She instigated the current workers' compensation claim, alleging that the shoulder injury was a result of the fall. Garden View answered, alleging fraud under La.R.S. 23:1208 and contending that she failed to disclose prior shoulder injuries on a post-hire medical form and in the investigation surrounding the incident. After trial on the matter, the workers' compensation judge found that Ms. Bartley had suffered a workplace accident that would entitle Ms. Bartley to workers' compensation benefits, but that she had forfeited the right to those benefits by committing fraud pursuant to La.R.S. 23:1208. From that decision, Ms. Bartley appeals.

On appeal, Ms. Bartley asserts two assignments of error.[1] She claims that the workers' compensation judge erred in finding forfeiture was allowed under

---

[1] Ms. Bartley claims three assignments of error in brief, rather than the two addressed above. However, her third alleged "assignment of error" is that she should be awarded attorney fees for this appeal. Clearly, seeking attorney fees for work performed on appeal is not a true allegation of any error on the part of the workers' compensation judge. Additionally, this assignment of error is not briefed, meaning we need not address it. Uniform Rules-Courts of Appeal, 2-12.4. We will note for the sake of thoroughness, though, that our finding below would render this assignment of error moot, even if it had been properly argued.

La.R.S. 23:1208, where she claimed the statements regarding her prior medical history were due to confusion, rather than intentional deceit. She also claims that the workers' compensation judge erred in finding she failed to prove her allegations that Garden View committed fraud under La.R.S. 23:1208.

Ms. Bartley's first claims that the workers' compensation judge erred in finding that Garden View proved that she committed fraud.

Louisiana Revised Statutes 23:1208 provides in pertinent part:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

. . . .

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

The Louisiana Supreme Court in *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138, p. 14 (La. 9/5/95), 660 So.2d 7, 16, addressed the proof required under La.R.S. 23:1208:

By its plain words, Section 23:1208 requires only that 1) the claimant make a false statement or representation, 2) the statement or representation be willfully made, and 3) the statement or representation be made for the purpose of obtaining workers' compensation benefits.

The legislature has made a policy decision that willful and deliberate false statements made specifically for the purpose of obtaining workers' compensation benefits is an attempt to defraud the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over recent years to make Section 1208 easier to enforce and to make its penalties stronger.

The *Resweber* court noted that false representations must be made for the purpose of obtaining benefits and must be more than inadvertent or inconsequential statements. The court stated:

It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.

*Id*. at 15-16. Louisiana Revised Statutes 23:1208 applies to statements made to insurance investigators and physicians alike; and it imposes no requirement that the employer show prejudice. *Id*.

A decision to impose or deny forfeiture under La.R.S. 23:1208 is a factual finding which will not be disturbed on appeal absent manifest error. *Brooks v. Madison Parish Serv. Dist. Hosp.*, 41,957 (La.App. 2 Cir. 3/7/07), 954 So.2d 207, *writ denied*, 07-720 (La. 5/18/07), 957 So.2d 155. To reverse a fact finder's determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). When there are two permissible views of the evidence, the workers' compensation judge's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id*.

In brief, Ms. Bartley asserts that the workers' compensation judge improperly weighed the evidence against her. However, as a reviewing court, it is

undeniable that we are not permitted to reweigh the evidence or reach our own factual conclusions from the record. *Marange v. Custom Metal Fabricators, Inc.*, 11–2678 (La. 7/2/12), 93 So.3d 1253. Having reviewed the record before us, we cannot find error in the workers' compensation judge's finding that Ms. Bartley deliberately made false statements in order to receive workers' compensation benefits.

When she was hired at Garden View, Ms. Bartley stated in a post-hire medical form that she had no history of tingling in her arms or fingers, no difficulty lifting, and no shooting pain from her neck or upper back to her arms. She also denied any history of neck pain or injury, or shoulder pain. She further denied being placed on restricted activities by a doctor.

In a recorded statement made to Kermit Smith as part of the investigation by Garden View's workers' compensation insurer, Ms. Bartley stated she had never filed a workers' compensation claim or received workers' compensation benefits. She denied having any shoulder pain or problems prior to her fall at Garden View. She likewise claimed that she had never missed work due to injury, never had problems lifting, or was limited in working by a doctor prior to the Garden View fall. However, counsel for Garden View surgically deployed a catalog of medical records that directly undercut the statements and testimony Ms. Bartley made regarding her shoulder injury.

As established by Garden View at trial, a review of Ms. Bartley's medical records show multiple complaints of neck, arm, and shoulder pain dating back to 2006. In January 2006, she presented to Iberia Medical Center with a chief complaint of left arm numbness and pain when lifting that was an eight, on a scale of one to ten. At trial, Ms. Bartley claimed that she never had arm, shoulder, and

neck symptoms prior to 2008, in direct contradiction to this evidence. Her medical records show these complaints and pain level were repeated at two subsequent follow-up appointments that month.

Then, despite direct testimony that she never had pain up and down her arm when lifting prior to her Garden View fall, in January 2008, Ms. Bartley presented to her employer at that time, Cypress Bayou Casino, with an injury to her shoulder from lifting five and ten gallon buckets. She then presented to the emergency room indicating left arm and neck pain. She was diagnosed with a cervical strain and had several follow-up procedures to deal with that pain, including x-rays and MRIs, and was restricted in her work duties. She was prescribed physical therapy from two separate doctors for her neck and shoulder pain at that time. At one appointment, she stated her shoulder pain was at a ten out of ten level with motion. Once her strain began to resolve, it became clear to her doctors that she also had Carpel Tunnel Syndrome, which she had surgery for in May 2008.

Further, at trial, she testified that she had no problems with her hands or arms and was able to return to work with no restrictions after the Carpel Tunnel release surgery. This was likewise refuted by her medical records. Her medical records show that despite a well-healed, successful surgery, she again complained to her doctors and physical therapists of numbness from her left hand to shoulder, in July, August, and September of 2008, often while lifting things at work, or holding her grandchild. This pain was found to be of "undetermined etiology" by her orthopedic surgeon.

These numerous contradictions severely undermine Ms. Bartley's testimony and credibility, and also provide a reasonable factual basis for the workers' compensation judge's finding that Ms. Bartley willfully and knowingly attempted

to hide her injury. Hence, a reasonable factual basis does exist for the finding of the workers' compensation judge. In that light, there is no way we can find the workers' compensation judge committed manifest error in its findings.

Ms. Bartley next claims that the workers' compensation judge erred in denying her claim that Garden View committed fraud under La.R.S. 23:1208. The first mention that Ms. Bartley makes of fraud is in her post-trial brief to the workers' compensation judge. Garden View claims that Ms. Bartley should not be able to make claims concerning La.R.S. 23:1208, as she did not plead them. While sympathetic to Garden View's assertion due to the timing of the allegations, we will address this assignment of error for the sake of thoroughness, as the law is well settled that pleadings may be enlarged by evidence bearing on the affirmative defenses, adduced without objection, providing that the evidence is not pertinent to any other artfully pleaded issues. La.Code Civ.P. art. 1154. *Hopkins v. American Cyanamid Co.,* 95-1088 (La. 1/16/96), 666 So.2d 615; *Harmon v. Simon*, 624 So.2d 981 (La.App. 3 Cir. 1993). In the case sub judice, Garden View's counsel did not object to the testimony giving rise to Ms. Bartley's allegations.

Ms. Bartley claims that employees of Garden View, Edie Cassleman and Keri Simon, knowingly withheld information from Garden View's workers' compensation insurer to prevent her from receiving benefits. However, there is no evidence in the record whatsoever to support that claim. The record shows that both Ms. Cassleman and Ms. Simon believed that Ms. Bartley suffered a stroke or cardiac event the day she fainted. While they were aware Ms. Bartley may have struck her head in the fall, neither saw any sign or evidence of injury to her head or any other part of her body. Moreover, Ms. Bartley has never claimed any injury to her head whatsoever, even to this day. When she was able to speak, Ms. Bartley

indicated that she felt no pain after her fall. As such, Ms. Bartley was sent to the hospital in an ambulance under the belief she had suffered a stroke. Ms. Cassleman and Ms. Simon testified that Ms. Bartley never contacted them regarding a workers' compensation claim and that they were unaware of any injury until Garden View was contacted by Ms. Bartley's attorney regarding the matter months after the fall. They testified that no workers' compensation claim was forwarded to Garden View's insurer because of their belief that Ms. Bartley had experienced a stroke, rather than a workplace injury. This testimony supports the the workers' compensation judge's finding that Ms. Bartley failed to prove that Garden View committed fraud under La.R.S. 23:1208. As the workers' compensation judge's finding has a reasonable factual basis, it cannot be manifest error. This assignment of error has no merit.

For the above reasons, the findings of the workers' compensation judge are hereby affirmed. Costs of this appeal are assessed against Ms. Bartley.

**AFFIRMED.**

7

**MARION E. BARTLEY**

**VERSUS**

**GARDEN VIEW ASSISTED LIVING**

**SAUNDERS, J. DISSENTS WITH WRITTEN REASONS.**

In January of 2006, claimant suffered from left arm pain and numbness. This pain continued through January of 2008 in addition to neck pain. Claimant subsequently underwent surgery in May of 2008 after being diagnosed with Carpal Tunnel Syndrome, all of which originated in her wrist and caused the arm and neck pain. Pain from this condition was recorded again throughout July, August, and September of 2008. Claimant maintains that the pain eventually subsided, and claimant continued to work in various positions and locations, including beginning her employment with Defendant. Claimant was employed by Defendant two years prior to the August 19, 2014 fall, the accident from which the current case arises.

Louisiana Revised Statute 23:1208 provides, in pertinent part:

A. It shall be unlawful for any purpose, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself of for any other person, to willfully make a false statement or representation.

As stated above, any false statements or representations must be made for the purpose of obtaining benefits or payments under workers' compensation. Based on the record and timeline of events, it appears that claimant made statements concerning her medical history in order to obtain employment, not to defraud the system for workers' compensation benefits. Moreover, there is confusion, as

shown in the record, as to the claimant's exact understanding of the nature of her previous injuries. She has at all times maintained that the injuries related to her Carpal Tunnel diagnosis were contained to her wrist, which was remedied by surgery in May of 2008. The injury in the case at hand is a tendon injury in her shoulder, completely unrelated to her previous wrist injury.

Accordingly, I cannot agree with the proposed majority opinion. I respectfully dissent.